# EXHIBIT

# 1

# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only |
| --- |
| Payment type: ☐ ck ☐ cg ☐ ca |
| Chg/Ck Number: |
| Amount: |
| Overpayment: |
| Batch Number: |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
| --- | --- | --- |
| Joseph Auddino, Esquire | (215) 462-3200 | Camden |

| Firm Name (if applicable) | Docket Number (when available) |
| --- | --- |
| MARINO ASSOCIATES | |

| Office Address | Document Type |
| --- | --- |
| 301 Wharton Street | COMPLAINT |
| Philadelphia, PA 19147 | Jury Demand  ■ Yes  ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
| --- | --- |
| S.B. | S.B., an adult individual v Roman Catholic Archdiocese of Philadelphia and Roman Catholic Diocese of Camden |

| Case Type Number (See reverse side for listing) | Are sexual abuse claims alleged? | Is this a professional malpractice case?  ☐ Yes  ■ No |
| --- | --- | --- |
| 602 Assault & Battery | ■ Yes  ☐ No | If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |

Related Cases Pending?  ☐ Yes  ■ No   If "Yes," list docket numbers

| Do you anticipate adding any parties (arising out of same transaction or occurrence)?  ☐ Yes  ■ No | Name of defendant's primary insurance company (if known)  ☐ None  ■ Unknown |
| --- | --- |

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

| Do parties have a current, past or recurrent relationship?  ■ Yes  ☐ No | If "Yes," is that relationship? ☐ Employer/Employee ☐ Familial ☐ Friend/Neighbor ☐ Business ■ Other (explain) Priest - Parishoner |
| --- | --- |

Does the statute governing this case provide for payment of fees by the losing party?  ■ Yes  ☐ No

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition

It is anticipated that this case will involve discovery issues relating to the disclosure of records maintained by Defendants relating to personnel records of offending priests and details of abuse held in secrecy by the Defendants.

| Do you or your client need any disability accommodations?  ☐ Yes  ■ No | If yes, please identify the requested accommodation: |
| --- | --- |
| Will an interpreter be needed?  ☐ Yes  ■ No | If yes, for what language? |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

Attorney Signature:



**Side 2**

# Civil Case Information Statement
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days discovery

| | | | |
|---|---|---|---|
| 151 | Name Change | 506 | PIP Coverage |
| 175 | Forfeiture | 510 | UM or UIM Claim (coverage issues only) |
| 302 | Tenancy | 511 | Action on Negotiable Instrument |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) | 512 | Lemon Law |
| | | 801 | Summary Action |
| 502 | Book Account (debt collection matters only) | 802 | Open Public Records Act (summary action) |
| 505 | Other Insurance Claim (including declaratory judgment actions) | 999 | Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | | | |
|---|---|---|---|
| 305 | Construction | 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) | 605 | Personal Injury |
| | | 610 | Auto Negligence – Property Damage |
| 599 | Contract/Commercial Transaction | 621 | UM or UIM Claim (includes bodily injury) |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) | 699 | Tort – Other |

### Track III - 450 days discovery

| | | | |
|---|---|---|---|
| 005 | Civil Rights | 608 | Toxic Tort |
| 301 | Condemnation | 609 | Defamation |
| 602 | Assault and Battery | 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 604 | Medical Malpractice | | |
| 606 | Product Liability | 617 | Inverse Condemnation |
| 607 | Professional Malpractice | 618 | Law Against Discrimination (LAD) Cases |

### Track IV - Active Case Management by Individual Judge / 450 days discovery

| | | | |
|---|---|---|---|
| 156 | Environmental/Environmental Coverage Litigation | 514 | Insurance Fraud |
| 303 | Mt. Laurel | 620 | False Claims Act |
| 508 | Complex Commercial | 701 | Actions in Lieu of Prerogative Writs |
| 513 | Complex Construction | | |

### Multicounty Litigation (Track IV)

| | | | |
|---|---|---|---|
| 271 | Accutane/Isotretinoin | 601 | Asbestos |
| 274 | Risperdal/Seroquel/Zyprexa | 623 | Propecia |
| 281 | Bristol-Myers Squibb Environmental | 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 282 | Fosamax | 625 | Firefighter Hearing Loss Litigation |
| 285 | Stryker Trident Hip Implants | 626 | Abilify |
| 286 | Levaquin | 627 | Physiomesh Flexible Composite Mesh |
| 289 | Reglan | 628 | Taxotere/Docetaxel |
| 291 | Pelvic Mesh/Gynecare | 629 | Zostavax |
| 292 | Pelvic Mesh/Bard | 630 | Proceed Mesh/Patch |
| 293 | DePuy ASR Hip Implant Litigation | 631 | Proton-Pump Inhibitors |
| 295 | AlloDerm Regenerative Tissue Matrix | 632 | HealthPlus Surgery Center |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components | 633 | Prolene Hernia System Mesh |
| 297 | Mirena Contraceptive Device | | |
| 299 | Olmesartan Medoxomil Medications/Benicar | | |
| 300 | Talc-Based Body Powders | | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category** ☐ **Putative Class Action** ☐ **Title 59** ☐ **Consumer Fraud**

**MARINO ASSOCIATES**
**BY** JOSEPH AUDDINO, ESQUIRE
NJ ATTORNEY I.D. 08862013
301 WHARTON STREET
PHILADELPHIA, PA 19147
(215) 462-3200

Attorneys for plaintiff

| | |
|---|---|
| S.B., an adult individual : | SUPERIOR COURT OF NEW |
| c/o Marino Associates : | JERSEY - LAW DIVISION: |
| 301 Wharton Street : | CAMDEN COUNTY |
| Philadelphia, PA 19147 : | |
| : | DOCKET No: |
| Plaintiff : | |
| v : | CIVIL ACTION |
| : | |
| ROMAN CATHOLIC ARCHDIOCESE OF : | |
| PHILADELPHIA : | |
| 222 North 17th Street : | |
| Philadelphia, PA 19103 : | |
| : | |
| and : | |
| : | |
| ROMAN CATHOLIC DIOCESE OF : | |
| CAMDEN : | |
| 631 Market Street : | |
| Camden, NJ 08102 : | |
| : | |
| Defendants : | |

## CIVIL ACTION - COMPLAINT

AND NOW comes the plaintiff S.B., by and through counsel, and demands of the defendants

jointly and severally, sums in excess of the local mandatory arbitration rules, exclusive of interest,

costs, and damages for prejudgment delay, upon the causes of action set forth in the following:

## THE PARTIES AND RELATED ENTITIES

1.      Plaintiff S.B. is an adult individual with a residence within the state of New Jersey.

Plaintiff may be contacted by and through counsel, Joseph Auddino, Esquire of Marino Associates

at 301 Wharton Street, Philadelphia, PA 19147.

2.      The defendant Roman Catholic Archdiocese of Philadelphia is a religious organization of the Roman Catholic Church serving the Southeastern region of Pennsylvania overseeing parishes located within the counties Philadelphia, Montgomery, Bucks, Chester and Delaware in Pennsylvania operating under the Code of Cannon Law with a principal place of business located 222 North 17th Street, Philadelphia, Pennsylvania 19103. At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia acted by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment, authority or apparent authority.

3.      The defendant Roman Catholic Diocese of Camden is a religious organization of the Roman Catholic Church serving the South Jersey community through faith, education and social services overseeing parishes within the counties of Atlantic, Camden, Cape May, Cumberland, Gloucester and Salem in New Jersey operating under the Code of Cannon Law with a principal place of business located 631 Market Street, Camden, NJ 08102. At all times material hereto, the defendant Roman Catholic Diocese of Camden acted by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment, authority or apparent authority.

**JURISDICTION AND VENUE**

4.      Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

5.      This Court maintains original jurisdiction over the instant claims pursuant to New Jersey Constitution, article VI, section 3, paragraph 2 which establishes original jurisdiction in the Superior Court of New Jersey in all causes.

6.      Venue of this matter is properly laid in this judicial district pursuant to N.J. Court Rules, R. 4:3-2 as a result of a substantial part of the events or omissions giving rise to the claims set forth herein having occurred in this judicial district or in which any party to the action resides at the time of its commencement.

### DEFENDANT ROMAN CATHOLIC ARCHDIOCESE OF PHILADELPHIA'S CONTACTS WITH THE FORUM OF NEW JERSEY

7.      Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

8.      At all relevant times material to the events giving rise to the causes of action herein, defendant Roman Catholic Archdiocese of Philadelphia owned real property located in Ventnor, NJ during the calendar years 1963 through 2013.

9.      Defendant Roman Catholic Archdiocese of Philadelphia owned real property consisting of a 19-room, 9,800-square-foot mansion having a street address 114 Princeton Avenue, Ventnor, NJ referred to as Villa St. Joseph by the Sea, during calendar years 1963 through 2012.

10.      Defendant Roman Catholic Archdiocese of Philadelphia sold the real property consisting of a 19-room, 9,800-square-foot mansion having a street address 114 Princeton Avenue, Ventnor, NJ referred to as Villa St. Joseph by the Sea, on September 15, 2012, for the purchase price equaling $4.5 million.

11.      Upon information and belief, defendant Roman Catholic Archdiocese of Philadelphia owned a second real property having a street address located in Ventnor, NJ which it sold in the calendar year of 2013.

12.    At all relevant times material to the events giving rise to the causes of action herein, defendant Roman Catholic Archdiocese of Philadelphia owned and operated the Saint Charles Borromeo Seminary located 100 E Wynnewood Road, Wynnewood, PA 19096-3001.

13.    At all relevant times material to the events giving rise to the causes of action herein and presently, upon the direction of defendant the Roman Catholic Archdiocese of Philadelphia, the Saint Charles Borromeo Seminary partners with the defendant Catholic Diocese of Camden which has a principal place of operation located 631 Market Street, Camden, NJ 08102 in conducting the business of forming priests, deacons, religious lay men and women and fostering the recruitment of candidates for the priesthood and their enrollment in the College Seminary and the Theology Seminary at Saint Charles Borromeo.

14.    At all relevant times material to the events giving rise to the causes of action herein and presently, upon the direction of defendant the Roman Catholic Archdiocese of Philadelphia, the Saint Charles Borromeo Seminary partners with the defendant Catholic Diocese of Trenton which has a principal place of operation located 701 Lawrenceville Road, Trenton, NJ 08648 in conducting the business of forming priests, deacons, religious lay men and women and fostering the recruitment of candidates for the priesthood and their enrollment in the College Seminary and the Theology Seminary at Saint Charles Borromeo.

## GENERAL ALLEGATIONS

15.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

16.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia maintained authority to govern priests within its circumscribed geographic boundaries pursuant to Canon law.

17.     At all times material hereto, the defendant Roman Catholic Diocese of Camden maintained authority to govern priests within its circumscribed geographic boundaries pursuant to Canon law.

18.     Reverend Thomas D. Graham, deceased 2010, was an ordained priest employed by the defendant Roman Catholic Archdiocese of Philadelphia.

19.     At all times material hereto, until the date of his death, Reverend Thomas D. Graham was subject to the authority, dominion, and control of the defendant Roman Catholic Archdiocese of Philadelphia.

20.     At all times material hereto, Reverend Thomas D. Graham was an employee, agent, worker and/or representative of the defendant Roman Catholic Archdiocese of Philadelphia acting within the scope of his employment, authority or apparent authority.

21.     At the time of Reverend Thomas D. Graham's employment with the defendant Roman Catholic Roman Catholic Archdiocese of Philadelphia, Reverend Thomas D. Graham demonstrated pedophile tendencies and posed a risk to children.

22.     At all times material hereto, Reverend Thomas D. Graham was assigned to serve the parish of Our Lady of Mount Carmel Church located in Philadelphia, Pennsylvania in the capacity of assistant pastor and to perform those duties required of a priest in the defendant Archdiocese of Philadelphia.

23.     Father William Kaufman is an ordained priest employed by the defendant Roman Catholic Archdiocese of Philadelphia.

24.     At all times material hereto, Father William Kaufman was subject to the authority, dominion, and control of the defendant Roman Catholic Archdiocese of Philadelphia.

25.    At all times material hereto, Father William Kaufman was assigned to serve the parish of Our Lady of Mount Carmel located in Philadelphia, Pennsylvania and to perform those duties required of a priest in the defendant Archdiocese of Philadelphia.

26.    At all times material hereto, Father William Kaufman served as an assistant of Reverend Thomas D. Graham.

27.    Monsignor Joseph J. Gallagher, deceased 2018, was an ordained priest employed by the defendant Roman Catholic Archdiocese of Philadelphia.

28.    At all times material hereto, until the date of his death, Monsignor Joseph J. Gallagher was subject to the authority, dominion, and control of the defendant Roman Catholic Archdiocese of Philadelphia.

29.    At all times material hereto, Monsignor Joseph J. Gallagher was an employee, agent, worker and/or representative of the defendant Roman Catholic Archdiocese of Philadelphia acting within the scope of his employment, authority or apparent authority.

30.    At the time of Monsignor Joseph J. Gallagher's employment with the defendant Roman Catholic Archdiocese of Philadelphia, Monsignor Joseph J. Gallagher demonstrated pedophile tendencies and posed a risk to children.

31.    Monsignor Joseph J. Gallagher was assigned to serve the parish of Saint Richards located in Philadelphia, Pennsylvania in the capacity of pastor of Saint Richards Church and to perform those duties required of a priest in the defendant Archdiocese of Philadelphia.

32.    Father Gerald D. Canavan is an ordained priest employed by defendant Roman Catholic Archdiocese of Philadelphia.

33.    At all times material hereto, Father Gerald D. Canavan was subject to the authority, dominion, and control of the defendant Roman Catholic Archdiocese of Philadelphia.

34.     At all times material hereto, Father Gerald D. Canavan was assigned to serve the parish of Our Lady of Mount Carmel Church located in Philadelphia, Pennsylvania in the capacity of assistant pastor and to perform those duties required of a priest in the defendant Archdiocese of Philadelphia.

35.     Father John Bradley, deceased, was an ordained priest employed by the defendant Roman Catholic Archdiocese of Philadelphia.

36.     At all times material hereto, Father John Bradley was subject to the authority, dominion, and control of the defendant Roman Catholic Archdiocese of Philadelphia.

37.     At all times material hereto, Father John Bradley was assigned to serve the parish of Our Lady of Mount Carmel located in Philadelphia, Pennsylvania and to perform those duties required of a priest in the defendant Archdiocese of Philadelphia.

38.     At all times material hereto, Bishop Louis A. DeSimone, deceased, was an ordained priest employed by the defendant Roman Catholic Archdiocese of Philadelphia.

39.     At all times material hereto, Bishop Louis A. DeSimone was subject to the authority, dominion, and control of the defendant Roman Catholic Archdiocese of Philadelphia.

40.     At all times material hereto, Bishop Louis A. DeSimone was assigned to serve in the capacity of the Auxiliary Bishop of Philadelphia, pastor emeritus of St. Monica Parish located in Philadelphia, Pennsylvania and to perform those duties required of an assistant bishop of in the defendant Archdiocese of Philadelphia.

41.     At all times material hereto, Monsignor Thomas Guenther, deceased, was an ordained priest employed by defendant Roman Catholic Diocese of Camden.

42.     At all times material hereto, Monsignor Thomas Guenther, was subject to the authority, dominion, and control of the defendant Roman Catholic Diocese of Camden.

43.     At all times material hereto, Monsignor Thomas Guenther was an employee, agent, worker and/or representative of the defendant Roman Catholic Diocese of Camden acting within the scope of his employment, authority or apparent authority.

44.     At all times material hereto, Auxiliary Bishop of Camden, James L. Shad was an ordained priest employed by the defendant Roman Catholic Diocese of Camden.

45.     At all times material hereto, Auxiliary Bishop James L. Shad was subject to the authority, dominion, and control of the defendant Roman Catholic Diocese of Camden.

46.     At all times material hereto, Auxiliary Bishop James L. Shad was an employee, agent, worker and/or representative of the defendant Roman Catholic Diocese of Camden acting within the scope of his employment, authority or apparent authority.

47.     At all times material hereto, Bishop of Camden James T. McHugh, deceased, was an ordained priest employed by the defendant Roman Catholic Diocese of Camden.

48.     At all times material hereto, Bishop James T. McHugh was subject to the authority, dominion, and control of the defendant Roman Catholic Diocese of Camden.

49.     At all times material hereto, Bishop James T. McHugh was an employee, agent, worker and/or representative of the defendant Roman Catholic Diocese of Camden acting within the scope of his employment, authority or apparent authority.

50.     Reverend Charles E. Kuhl, deceased 2002, was an ordained priest employed by the defendant Roman Catholic Diocese of Camden.

51.     At all times material hereto, until the date of his death, Reverend Charles E. Kuhl was subject to the authority, dominion, and control of the defendant Roman Catholic Diocese of Camden.

52.     At all times material hereto, Reverend Charles E. Kuhl was an employee, agent, worker and/or representative of the defendant Roman Catholic Diocese of Camden acting within the scope of his employment, authority or apparent authority.

53.     At the time of Reverend Charles E. Kuhl's employment with the defendant Roman Catholic Diocese of Camden, Reverend Charles E. Kuhl demonstrated pedophile tendencies and posed a risk to children.

54.     At all times material hereto, Reverend Charles E. Kuhl was employed by the defendant Roman Catholic Diocese of Camden assigned to serve the Diocese of Camden in Camden, New Jersey to act as a parish priest and to perform those duties required of a priest in the defendant Roman Catholic Diocese of Camden.

55.     Reverend Walter N. Smith, deceased, was an ordained priest employed by the defendant Roman Catholic Diocese of Camden.

56.     At all times material hereto, until the date his death, Reverend Walter N. Smith was subject to the authority, dominion, and control of the defendant Roman Catholic Diocese of Camden.

57.     At all times material hereto, Reverend Walter N. Smith was an employee, agent, worker and/or representative of the defendant Roman Catholic Diocese of Camden acting within the scope of his employment, authority or apparent authority.

58.     At the time of Reverend Walter N. Smith's employment with the defendant Roman Catholic Diocese of Camden, Reverend Walter N. Smith demonstrated pedophile tendencies and posed a risk to children.

59.     At all times material hereto, Reverend Walter N. Smith was assigned to serve the Diocese of Camden in Camden, New Jersey to act as a parish priest and to perform those duties required of a priest in the defendant Roman Catholic Diocese of Camden.

## AUTHORITY FURNISHED TO OFFENDING PRIESTS BY DEFENDANT
## ROMAN CATHOLIC ARCHDIOCESE OF PHILADELPHIA

60.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

61.     The defendant Roman Catholic Archdiocese of Philadelphia gave authority to Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher to supervise the involvement and control the activities involving children, such as the plaintiff.

62.     The defendant Roman Catholic Archdiocese of Philadelphia placed Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher in a position of authority and entrusting them with a great deal of authority over children, such as the plaintiff.

63.     Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher's exercise of authority over children, such as the plaintiff, furnished to them by the defendant Roman Catholic Archdiocese of Philadelphia was incidental to their employment duties.

64.     Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher's exercise of authority over children, such as the plaintiff, furnished to them by the defendant Roman Catholic Archdiocese of Philadelphia was an integral part of their employment duties.

65.     Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher exercised the supervisor authority over children, such as the plaintiff, furnished to them by the defendant Roman Catholic Archdiocese of Philadelphia.

66.     Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher's exercise of the supervisor authority over children, such as the plaintiff, furnished to them by defendant Roman Catholic Archdiocese of Philadelphia resulted in a violation of the New Jersey Child Sexual Abuse Act.

67.     The authority delegated by the defendant Roman Catholic Archdiocese of Philadelphia to Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher aided Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher in injuring the plaintiff.

## AUTHORITY FURNISHED TO OFFENDING PRIESTS BY DEFENDANT ROMAN CATHOLIC DIOCESE OF CAMDEN

68.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

69.     The defendant Roman Catholic Diocese of Camden gave authority to Reverend Charles E. Kuhl and Reverend Walter N. Smith to supervise the involvement and control the activities involving children, such as the plaintiff.

70.     The defendant Roman Catholic Diocese of Camden placed Reverend Charles E. Kuhl and Reverend Walter N. Smith in a position of authority and entrusting them with a great deal of authority over children, such as the plaintiff.

71.     Reverend Charles E. Kuhl and Reverend Walter N. Smith's exercise of authority over children, such as the plaintiff, furnished to them by the defendant Roman Catholic Diocese of Camden was incidental to their employment duties.

72.     Reverend Charles E. Kuhl and Reverend Walter N. Smith's exercise of authority over children, such as the plaintiff, furnished to them by the defendant Roman Catholic Diocese of Camden was an integral part of their employment duties.

73.     Reverend Charles E. Kuhl and Reverend Walter N. Smith exercised the supervisor authority over children, such as the plaintiff, furnished to them by the defendant Roman Catholic Diocese of Camden.

74.     Reverend Charles E. Kuhl and Reverend Walter N. Smith's exercise of the supervisor authority over children, such as the plaintiff, furnished to them by Roman Catholic Diocese of Camden resulted in a violation of the New Jersey Child Sexual Abuse Act.

75.     The authority delegated by the defendant Roman Catholic Roman Catholic Diocese of Camden to Reverend Charles E. Kuhl and Reverend Walter N. Smith aided Reverend Charles E. Kuhl and Reverend Walter N. Smith in injuring the plaintiff.

## THE PLAINTIFF'S UPBRINGING TO FOLLOW THE FAITH OF THE
## ROMAN CATHOLIC RELIGION AND OBEY THE COMMANDS OF PARISH PRIESTS

76.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

77.     The parents of the plaintiff identified as Roman Catholics, observed, participated in the practices of, and devoutly followed the faith of the Roman Catholic Religion.

78.     The plaintiff was reared by his parents to observe, participate in the practices of, and devoutly follow the faith of the Roman Catholic Religion.

79.     At all times material hereto, the plaintiff's parents and the plaintiff were members of the Our Lady of Mount Carmel Church having a street address located 2319 S. 3rd St, Philadelphia, PA 19148.

80.     At all times material hereto, the plaintiff's parents and the plaintiff worshipped, attended mass, and received the holy sacraments at Our Lady of Mount Carmel Church having a street address located 2319 S. 3rd St, Philadelphia, PA 19148.

81.     During the time period of September 1985 through June 1993, the plaintiff attended Our Lady of Mount Carmel Roman Catholic Church School having a street address located 2319 S. 3rd St, Philadelphia, PA 19148 as an enrolled student.

82.     At all times material hereto, the plaintiff resided with his biologic parents in a household situated within walking distance of Our Lady of Mount Carmel Church located 2319 S. 3rd St, Philadelphia, PA 19148.

83.     At all times material hereto, Our Lady of Mount Carmel Church was a parish under the control and management of the defendant Roman Catholic Archdiocese of Philadelphia.

84.     At all times material hereto, as a result of the plaintiff attending Our Lady of Mount Carmel Roman Catholic Church School as a student and his membership at Our Lady of Mount Carmel Church, plaintiff was taught and commanded to trust and to rely upon parish priests, including Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, as well as the leaders of the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden.

85.     At all times material hereto, as a result of the plaintiff attending Our Lady of Mount Carmel Roman Catholic Church School and his membership at Our Lady of Mount Carmel Church, plaintiff was taught to obey the commands of parish priests, including Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, as well as the leaders of the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden.

86.     At all times material hereto, plaintiff believed it was mortally sinful and wrong to make any kind of an accusation against a priest of the Roman Catholic Church and that priests of the Roman Catholic Church could not and would not engage in conduct considered evil or wrong.

87.     At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden, by and through servants, workmen and/or employees, apparent agents and ostensible agents were responsible for supervising the welfare of students and altar servers entrusted to their care, such as the plaintiff.

88.     At all times material hereto, the parents of the plaintiff entrusted the well-being of the plaintiff to the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden, by and through servants, workmen and/or employees, apparent agents and ostensible agents, such as Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Father Gerald Canavan, Father John Bradley, Bishop Louis A. DeSimone, Reverend Charles E. Kuhl, Reverend Walter N. Smith, Monsignor Thomas Guenther, Auxiliary Bishop James L. Shad, Bishop James T. McHugh and Father William Kaufman.

89.     At all times material hereto, on behalf of the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden, Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Father Gerald Canavan, Father John Bradley, Bishop Louis A. DeSimone, Reverend Charles E. Kuhl, Reverend Walter N. Smith, Monsignor Thomas Guenther, Auxiliary Bishop James L. Shad, Bishop James T. McHugh and Father William Kaufman, each had an corresponding obligation to be solicitous for, as well as protective of, the plaintiff in the exercise of their position of superiority and purported holy authority.

90.     At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden invited and encouraged the plaintiff to accept each priest under their control purported to be in good standing, including servants, workmen and/or employees, apparent agents and ostensible agents, such as Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Father Gerald Canavan, Father John Bradley, Bishop Louis A. DeSimone, Reverend Charles E. Kuhl, Reverend Walter N. Smith, Monsignor Thomas Guenther, Auxiliary Bishop James L. Shad, Bishop James T. McHugh and Father William Kaufman, as persons worthy of and who had the responsibility to safeguard the plaintiff's physical and spiritual safety.

91.     At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden induced the plaintiff to entrust himself to the company and care of and servants, workmen and/or employees, apparent agents and ostensible agents, such as Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Father Gerald Canavan, Father John Bradley, Bishop Louis A. DeSimone, Reverend Charles E. Kuhl, Reverend Walter N. Smith,  Monsignor Thomas Guenther, Auxiliary Bishop James L. Shad, Bishop James T. McHugh and Father William Kaufman., and to participate in school and church related activities.

92.     At relevant times material hereto, the plaintiff performed the duties of an alter server assisting priest in the sanctuary during the officiating of Mass and other liturgical functions.

### THE SEXUAL ABUSE AND EXPLOITATION OF THE PLAINTIFF BY REVEREND THOMAS D. GRAHAM

93.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

94.     In or about the calendar year of 1989, the plaintiff was at or about nine (9) years of age and in the 4th grade of school, enrolled in and attending Our Lady of Mount Carmel Roman Catholic Church School.

95.     The plaintiff attended Our Lady of Mount Carmel Roman Catholic Church School up and until to the calendar year of 1993 when the plaintiff reached thirteen (13) years of age and in the 8th grade of school education.

96.     The plaintiff served as an alter boy at Our Lady of Mount Carmel Roman Catholic Church during the time period he was enrolled and attended Our Lady of Mount Carmel Roman Catholic Church School.

97.     As a result of attending Our Lady of Mount Carmel Roman Catholic Church School and serving as an alter boy for Our Lady of Mount Carmel Roman Catholic Church the plaintiff had repeated and continued contact with Reverend Thomas D. Graham.

98.     Reverend Thomas D. Graham ingratiated himself with the parents of the plaintiff.

99.     The parents of the plaintiff entrusted the welfare of the plaintiff to Reverend Thomas D. Graham allowing Reverend Thomas D. Graham to take custody and control of the plaintiff for prolonged periods of time and stand in loco parentis or as a surrogate parent over the plaintiff therein.

100.    On a regular and consistent basis, with the permission of the parents of the plaintiff, as the sole custodian of the plaintiff, Reverend Thomas D. Graham stood in loco parentis over the plaintiff or as a surrogate parent escorting the plaintiff on day long prayer events, including the "40 Hour Devotion" orchestrated by Reverend Thomas D. Graham providing the plaintiff with all necessary food, shelter, comfort, guidance and essentials during the same.

101.    On a regular and consistent basis, with the permission of the parents of the plaintiff, Reverend Thomas D. Graham accepted the responsibility to stand in loco parentis or as a surrogate parent over the plaintiff and to care for the welfare of the plaintiff who was of tender years and at a critical stage in his active mental development.

102.    Beginning in or about the calendar year of 1990, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Thomas D. Graham forced the plaintiff to engage in sexually provocative activities and illegal sexual contact with him.

103.    During the aforementioned time period, abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Thomas D. Graham frequently furnished plaintiff with pornographic videos.

104.    During the aforementioned time period on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Thomas D. Graham began a pattern of harmful sexual contact with plaintiff.

105.    During the aforementioned time period on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Thomas D. Graham performed oral sex and other immoral and illegal sexual acts upon plaintiff.

106.    During the aforementioned time period on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Thomas D. Graham rewarded the plaintiff with money after he performed oral sex and other immoral and illegal sexual acts upon plaintiff.

107.    It is estimated that between the calendar years of 1989 and 1990, Reverend Thomas D. Graham sexually exploited the plaintiff multiple times per week in excess of 100 hundred times.

108.    Reverend Thomas D. Graham threatened the plaintiff not to reveal the events that took place and the immoral and deviant acts which occurred.

109.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that Reverend Thomas D. Graham was a sexually abusive pedophilic or ephebophile priest.

**REVERED THOMAS D. GRAHAM'S TRAFFICKING OF THE PLAINTIFF TO MONSIGNOR JOSEPH J. GALLAGHER**

110.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

111.    At all times material hereto, Reverend Thomas D. Graham knew of Monsignor Joseph J. Gallagher's pedophile tendencies and his proclivity sexually exploit young boys such as the plaintiff.

112.    At or about the calendar year of 1990, when the plaintiff was at or about ten (10) years of age and in the 5th grade of school, to further a scheme to sexually exploit the plaintiff and initiate predatory behavior, while standing in loco parentis of the plaintiff, Reverend Thomas D. Graham trafficked the plaintiff to Monsignor Joseph J. Gallagher.

113.    Reverend Thomas D. Graham trafficked the plaintiff to Monsignor Joseph J. Gallagher with knowledge, belief and understanding that Monsignor Joseph J. Gallagher would sexually exploit the plaintiff.

114.    Reverend Thomas D. Graham trafficked the plaintiff to Monsignor Joseph J. Gallagher anticipating and expecting that Monsignor Joseph J. Gallagher would sexually exploit the plaintiff.

### THE SEXUAL ABUSE AND EXPLOITATION OF THE PLAINTIFF
### BY MONSIGNOR JOSEPH J. GALLAGHER

115.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

116.    At or about the calendar year of 1990, when the plaintiff was at or about ten (10) years of age and in the 5th grade of school, Reverend Thomas D. Graham introduced Monsignor Joseph J. Gallagher to the parents of the plaintiff.

117.    Monsignor Joseph J. Gallagher ingratiated himself with the parents of the plaintiff.

118.    The parents of the plaintiff entrusted the welfare of the plaintiff to Monsignor Joseph J. Gallagher allowing Monsignor Joseph J. Gallagher to take custody and control of the plaintiff for prolonged periods of time and stand in loco parentis or as a surrogate parent over the plaintiff therein.

119.     On a regular and consistent basis, with the permission of the parents of the plaintiff, as the sole custodian of the plaintiff,  Monsignor Joseph J. Gallagher stood in loco parentis over the plaintiff or as a surrogate parent escorting the plaintiff on day long and weekend trips orchestrated by Monsignor Joseph J. Gallagher providing the plaintiff with all necessary food, shelter, comfort, guidance and essentials during the same.

120.     On a regular and consistent basis with the permission of the parents of the plaintiff Monsignor Joseph J. Gallagher accepted the responsibility to stand in loco parentis or as a surrogate parent over the plaintiff and to care for the welfare of the plaintiff who was of tender years and at a critical stage in his active mental development.

121.     Beginning in or about the calendar year of 1990, at or about ten (10) years of age and in the 5th grade of school, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher forced the plaintiff to engage in sexually provocative activities and in sexual contact with him.

122.     During the aforementioned time period on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher began a pattern of harmful sexual contact with plaintiff.

123.     During the aforementioned time period on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher performed oral sex and other immoral and illegal sexual acts upon plaintiff.

124.     During the aforementioned time period, abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher frequently furnished plaintiff with pornographic magazines.

125.     During the aforementioned time period on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Monsignor Joseph J.

Gallagher rewarded the plaintiff with money after he performed oral sex and other immoral and illegal sexual acts upon plaintiff.

126.    In furtherance of a scheme to sexually exploit the plaintiff and initiate predatory behavior, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher transported the plaintiff across state lines from Philadelphia, Pennsylvania, to a shore house in North Wildwood, New Jersey.

127.    In the venue of the shore house in North Wildwood, New Jersey, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher sexually exploited the plaintiff engaging in immoral and illegal sexual contact with plaintiff.

128.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that Monsignor Joseph J. Gallagher was a sexually abusive pedophilic or ephebophile priest.

**MONSIGNOR JOSEPH J. GALLAGHER'S TRAFFICKING OF THE PLAINTIFF TO REVEREND CHARLES E. KUHL AND REVEREND WALTER N. SMITH**

129.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

130.    At all times material hereto, Reverend Thomas D. Graham knew of Reverend Charles E. Kuhl and Reverend Walter N. Smith's pedophile tendencies and proclivity to sexually exploit young boys such as the plaintiff.

131.    In the venue of the shore house in North Wildwood, New Jersey, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher introduced the plaintiff to Reverend

Charles E. Kuhl and Reverend Walter N. Smith for the purpose of Reverend Charles E. Kuhl and Reverend Walter N. Smith to sexually exploit the plaintiff.

132.     Beginning in or about approximately the calendar year of 1990 at or about when the plaintiff was ten (10) years of age and in the 5th grade of school, and thereafter, to further a scheme to sexually exploit the plaintiff and initiate predatory behavior, while standing in loco parentis of the plaintiff, Monsignor Joseph J. Gallagher transported the plaintiff across state lines from Philadelphia, Pennsylvania, to West Berlin, New Jersey and trafficked the plaintiff to Reverend Charles E. Kuhl and Reverend Walter N. Smith.

133.     Monsignor Joseph J. Gallagher trafficked the plaintiff to Reverend Charles E. Kuhl and Reverend Walter N. Smith with knowledge, belief and understanding that Reverend Charles E. Kuhl and Reverend Walter N. Smith would sexually exploit the plaintiff.

134.     Monsignor Joseph J. Gallagher trafficked the plaintiff to Reverend Charles E. Kuhl and Reverend Walter N. Smith anticipating and expecting that Reverend Charles E. Kuhl and Reverend Walter N. Smith would sexually exploit the plaintiff.

135.     Monsignor Joseph J. Gallagher threatened the plaintiff not to reveal the events that took place and the immoral and deviant acts which occurred.


**THE SEXUAL ABUSE AND EXPLOITATION OF THE PLAINTIFF
BY REVEREND CHARLES E. KUHL**

136.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

137.     Reverend Charles E. Kuhl ingratiated himself with the parents of the plaintiff.

138.    The parents of the plaintiff entrusted the welfare of the plaintiff to Reverend Charles E. Kuhl allowing Reverend Charles E. Kuhl to take custody and control of the plaintiff for prolonged periods of time and stand in loco parentis or as a surrogate parent over the plaintiff therein.

139.    On a regular and consistent basis, with the permission of the parents of the plaintiff, as the sole custodian of the plaintiff, Reverend Charles E. Kuhl stood in loco parentis over the plaintiff escorting the plaintiff on day long and weekend trips orchestrated by Reverend Charles E. Kuhl providing the plaintiff with all necessary food, shelter, comfort, guidance and essentials during the same.

140.    On a regular and consistent basis with the permission of the parents of the plaintiff Reverend Charles E. Kuhl accepted the responsibility to stand in loco parentis or as a surrogate parent over the plaintiff and to care for the welfare of the plaintiff who was of tender years and at a critical stage in his active mental development.

141.    Beginning in or about the calendar year of 1993, when the plaintiff was at or about thirteen (13) years of age and in the 8th grade of school, and continuing thereon, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Charles E. Kuhl forced the plaintiff to engage in a pattern of sexually provocative activities and in sexual contact with him.

142.    During the aforementioned time period, in the vicinity of residential home located in West Berlin, New Jersey, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Charles E. Kuhl engaged in harmful sexual contact with plaintiff.

143.    During the aforementioned time period, in the vicinity of Mater Ecclesia Roman Catholic Church Berlin, New Jersey, on repeated occasions abusing his position of sacred honor and

trust, while standing in loco parentis of the plaintiff, Reverend Charles E. Kuhl engaged in harmful sexual contact with plaintiff.

144.    During the aforementioned time period, in the vicinity of West Berlin, New Jersey, within the confines of a station wagon owned by Reverend Charles E. Kuhl, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Charles E. Kuhl engaged in harmful sexual contact with plaintiff.

145.    During the aforementioned time period, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Charles E. Kuhl performed oral sex and other immoral and illegal sexual acts upon plaintiff.

146.    During the aforementioned time period, in the vicinity of residential home located in West Berlin, New Jersey, abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff,  Reverend Charles E. Kuhl frequently furnished plaintiff with marijuana and alcoholic drinks in order to bring plaintiff into a diminished state of mind and to enable Reverend Charles E. Kuhl to sexually exploit the plaintiff.

147.    During the aforementioned time period on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Charles E. Kuhl rewarded the plaintiff with money after he performed oral sex and other immoral and illegal sexual acts upon plaintiff.

148.    Reverend Charles E. Kuhl threatened the plaintiff not to reveal the events that took place and the immoral and deviant acts which occurred.

149.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that Reverend Charles E. Kuhl was a sexually abusive pedophilic or ephebophile priest.

## THE SEXUAL ABUSE AND EXPLOITATION OF THE PLAINTIFF
## BY REVEREND WALTER N. SMITH

150.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

151.    The parents of the plaintiff entrusted the welfare of the plaintiff to Reverend Walter N. Smith allowing Reverend Walter N. Smith to take custody and control of the plaintiff for prolonged periods of time and stand in loco parentis or as a surrogate parent over the plaintiff therein.

152.    On a regular and consistent basis, with the permission of the parents of the plaintiff, as the sole custodian of the plaintiff,  Reverend Walter N. Smith stood in loco parentis over the plaintiff escorting the plaintiff on day long and weekend trips orchestrated by Reverend Walter N. Smith providing the plaintiff with all necessary food, shelter, comfort, guidance and essentials during the same.

153.    On a regular and consistent basis with the permission of the parents of the plaintiff Reverend Walter N. Smith accepted the responsibility to stand in loco parentis or as a surrogate parent over the plaintiff and to care for the welfare of the plaintiff who was of tender years and at a critical stage in his active mental development.

154.    Beginning in or about the calendar year of 1994, when the plaintiff was at or about fourteen (14) years of age, and in the 9th grade of school, and continuing thereafter, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith forced the plaintiff to engage in a pattern of sexually provocative activities and in sexual contact with him.

155.    During the aforementioned time period, in the vicinity of hotel located on Rte. 130 in Gloucester City, New Jersey, on repeated occasions abusing his position of sacred honor and

trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith engaged in harmful sexual contact with plaintiff.

156.    During the aforementioned time period, in the vicinity of a residential home located in West Berlin, New Jersey, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith engaged in harmful sexual contact with plaintiff.

157.    During the aforementioned time period, in the vicinity of the rectory of St. Cecelia's Roman Catholic Church located in Pennsauken, New Jersey, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith engaged in harmful sexual contact with plaintiff.

158.    During the aforementioned time period, in the vicinity of a residential home located in Cherry Hill, New Jersey, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith engaged in harmful sexual contact with plaintiff.

159.    During the aforementioned time period, in the vicinity of a residential home located in North Wildwood, New Jersey, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith engaged in harmful sexual contact with plaintiff.

160.    During the aforementioned time period, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff,  Reverend Walter N. Smith performed sadistic rituals upon the plaintiff which included lancing blemishes which presented on the skin of the plaintiff's back until blood appeared and then massaged the plaintiff's back with ointment to remedy the pain caused.

161.    During the aforementioned time period, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith performed oral sex and other immoral and illegal sexual acts upon plaintiff.

162.    During the aforementioned time period, abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff,  Reverend Walter N. Smith frequently furnished plaintiff with Xanax pills and alcoholic drinks in order to sedate the plaintiff and bring the plaintiff into a diminished state of mind and to enable Reverend Walter N. Smith to sexually exploit the plaintiff.

163.    During the aforementioned time period, on repeated occasions abusing his position of sacred honor and trust, while standing in loco parentis of the plaintiff, Reverend Walter N. Smith rewarded the plaintiff with money after he performed oral sex and other immoral and illegal sexual acts upon plaintiff.

164.    Reverend Walter N. Smith threatened the plaintiff not to reveal the events that took place and the immoral and deviant acts which occurred.

165.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that Reverend Walter N. Smith was a sexually abusive pedophilic or ephebophile priest.

**THE MANDATE OF THE HOLY SEE THAT THE DEFENDANTS OPERATE UNDER A PRACTICE, POLICY AND PROTOCOL TO SECRETE PERVASIVE MOLESTATION OF MINORS BY PRIESTS**

166.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

167.     The Holy See is the premiere governing body of the entire Roman Catholic Church located within the country of the Vatican City which provides a base for the administration of the Roman Catholic Church.

168.     The Holy See operates under the authority of the Code of Canon Law with the Pope designated as the supreme leader of the entire Roman Catholic Church.

169.     The Pope is vested with full, supreme, and universal unhindered power over the entire Roman Catholic Church.

170.     In or around the calendar year of  1962,  the Holy See caused a document [hereinafter the "1962 Policy"] to be privately circulated containing a set of procedural norms under which the Roman Catholic Church, its employees, agents, workers and/or representatives, including defendants the Roman Catholic Archdiocese of Philadelphia and the Dioceses of Camden, were instructed to comply in connection with the management of circumstances involving the solicitation of sex in confession, clergy sex with minors, homosexual relations, and bestiality.

171.     The "1962 Policy" instructed that all allegations of childhood sexual abuse be secreted by the Roman Catholic Church, its employees, agents, workers and/or representatives, including defendants the Roman Catholic Archdiocese of Philadelphia and the Dioceses of Camden.

172.     At all relevant times material to the events giving rise to the causes of action herein, the Holy See mandated that all allegations of childhood sexual abuse be kept under a cloak of complete secrecy by the Roman Catholic Church, its employees, agents, workers and/or representatives, including the defendants, even if that secrecy violated state, federal, or international law.

173.     The "1962 Policy" represented an official legislative text issued by the Congregation of the Holy Office and was approved by Pope John XXIII and imposed the highest level of secrecy

on the Roman Catholic Church, its employees, agents, workers and/or representatives, including the defendants, handling of clergy sexual abuse matters.

174.    The "1962 Policy" and other documents required the Roman Catholic Church, its employees, agents, workers and/or representatives, including the defendants, among other things, refuse to report child sexual abuse committed by priests to criminal or civil authorities, even where such failure to report would itself be a criminal offense.

175.    At all relevant times material to the events giving rise to the causes of action herein, the defendants the Roman Catholic Archdiocese of Philadelphia and the Dioceses of Camden were furnished with the "1962 Policy".

176.    Upon information and belief, the secret "1962 Policy" was first discovered and made public in or about July 2003 by news media in the United States and throughout the world.

### DEFENDANT ROMAN CATHOLIC ARCHDIOCESE OF PHILADELPHIA KNOWINGLY PERMITTED OR ACQUIESCED TO THE SEXUAL ABUSE OF THE PLAINTIFF

177.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

178.    The sexual abuse endured by the plaintiff at the hands of offending priests, on multiple occasions, was interrupted by and witnessed by non-involved priests who chose to take no action to intervene and safeguard the plaintiff from the abuse.

179.    In or about the calendar years of 1991, at or about when the plaintiff was eleven (11) years of age and in the sixth (6th) grade of school, the plaintiff participated in the Roman Catholic practice of confession in the confessional box of Our Lady of Mount Carmel Church.

180.    The confession of the plaintiff was officiated by Father William Kaufman of the defendant Roman Catholic Archdiocese of Philadelphia.

181.    In the confessional box, the plaintiff reported to Father William Kaufman that Reverend Thomas D. Graham had subjected the plaintiff to sexually provocative activities and had performed illegal sexual acts upon the plaintiff.

182.    Outside the confines of the confessional box, the plaintiff reported to Father William Kaufman that Reverend Thomas D. Graham had subjected the plaintiff to sexually provocative activities and had performed illegal sexual acts upon the plaintiff.

183.    In or about the calendar years of 1991, at or about when the plaintiff was eleven (11) years of age and in the sixth (6th) grade of school, the plaintiff participated in the Roman Catholic practice of confession in the confessional box of Our Lady of Mount Carmel Church.

184.    The confession of the plaintiff was officiated by the then assistant pastor of Our Lady of Mount Carmel Church Father Gerald Canavan.

185.    In the confessional box, the plaintiff reported to the then assistant pastor of Our Lady of Mount Carmel Church Father Gerald Canavan, that Reverend Thomas D. Graham had subjected the plaintiff to sexually provocative activities and had performed illegal sexual acts upon the plaintiff.

186.    At the close of the plaintiff's confession session, assistant pastor Father Gerald D. Canavan recommended that the plaintiff discuss the matter relating to the sex abuse perpetrated upon the plaintiff by the priest with the then pastor of Our Lady of Mount Carmel Church Father John Bradley.

187.    The day following the confession, prior to the morning mass, in the sacristy of Our Lady of Mount Carmel Church, the plaintiff revealed to the then pastor of Our Lady of Mount Carmel Church, Father John Bradley, that Reverend Thomas D. Graham had subjected the plaintiff to sexually provocative activities and had performed illegal sexual acts upon the plaintiff.

29

188.     The plaintiff revealed to the then pastor of Our Lady of Mount Carmel Church, Father John Bradley, that Reverend Thomas D. Graham had touched the plaintiff in his genitalia, groped the plaintiff's genitalia, kissed the plaintiff, performed oral sex on the plaintiff, and gave the plaintiff money in exchange.

189.     The plaintiff revealed to the then pastor of Our Lady of Mount Carmel Church, Father John Bradley, that the sexually provocative activities and illegal sexual contact of Reverend Thomas D. Graham had occurred in the elevator, back room, and near the kitchen area of Our Lady of Mount Carmel Church and in Reverend Thomas D. Graham's room in the rectory of the Our Lady of Mount Carmel Church.

190.     While in the sacristy of Our Lady of Mount Carmel Church, upon hearing the plaintiff's revelations, Father John Bradley sternly scolded the plaintiff for making the allegations of sexual misconduct against Reverend Thomas D. Graham and defended Reverend Thomas D. Graham stating to the then eleven (11) year-old plaintiff such things as*: "Father Graham is a holy man;" "You are going to ruin is his life;" "You do not know the value of priesthood;" "If your parents find out you will be grounded."*

191.     While in the sacristy of Our Lady of Mount Carmel Church, the plaintiff responded to the scolding of Father John Bradley by stating, *"Well my parents taught me that smoking is a sin, if Reverend Thomas D. Graham is so holy, why does he smoke?"*

192.     While in the sacristy of Our Lady of Mount Carmel Church, Father John Bradley slapped the plaintiff across the face with an open hand and stated, *"No one knows that Reverend Thomas D. Graham smokes. This conversation never happened; it dies here."*

193.     In or about the calendar years of 1991, at or about when the plaintiff was eleven (11) years of age and in the sixth (6th) grade of school, Bishop Louis A. DeSimone appeared on the

campus of Our Lady of Mount Carmel Church, Philadelphia, PA to officiate a confirmation ceremony.

194.    To orchestrate an opportunity for Bishop Louis A. DeSimone and the plaintiff to be alone, upon Bishop Louis A. DeSimone's arrival on the campus of Our Lady of Mount Carmel Church, Philadelphia, PA, Father John Bradley directed the plaintiff to greet Bishop Louis A. DeSimone in the parking lot.

195.    Upon Bishop Louis A. DeSimone's arrival on the campus of Our Lady of Mount Carmel Church, Philadelphia, PA, as directed by Father John Bradley, the plaintiff presented in the church parking and greeted Bishop Louis A. DeSimone and his assistant as they alighted from a black Lincoln Continental.

196.    To orchestrate an opportunity for Bishop Louis A. DeSimone and the plaintiff to be alone, Father John Bradley called to Bishop Louis A. DeSimone's assistant to enter the church so to leave the plaintiff and Bishop Louis A. DeSimone isolated in the church parking lot.

197.    While alone in the church parking area of Our Lady of Mount Carmel Church, Philadelphia, PA with the plaintiff, Bishop Louis A. DeSimone approached the plaintiff and stated, "*I understand that you have sins to confess between you and Father Graham.*"

198.    While alone with Bishop Louis A. DeSimone in the church parking area of Our Lady of Mount Carmel Church, Philadelphia, PA, upon hearing the comments of Bishop Louis A. DeSimone, the eleven (11) year-old plaintiff began to cry and become visibly upset.

199.    While alone with the plaintiff in the church parking area of Our Lady of Mount Carmel Church, Philadelphia, PA, Bishop Louis A. DeSimone responded to the plaintiff's emotional reaction by stating, "*Don't cry. Because of your courage Father Graham has been punished by being transferred. This must remain our secret.*" and then handed the plaintiff a twenty ($20.00) dollar bill.

31

200.     The plaintiff and Bishop Louis A. DeSimone proceeded together from the parking lot to the rectory of Our Lady of Mount Carmel Church, Philadelphia, PA entering the rectory through a rear door which provided ingress and egress from the rectory to the parking lot.

201.     The plaintiff and Bishop Louis A. DeSimone proceeded together into the dining area of the rectory of Our Lady of Mount Carmel Church, Philadelphia, PA.

202.     In the dining area of the rectory of Our Lady of Mount Carmel Church, Philadelphia, PA an elaborate offering of food and alcohol was displayed for priests who were congregated in the dining area to enjoy.

203.     Unlike other altar servers, the plaintiff was granted permission to stay in the company of the priests in the dining area of the rectory of Our Lady of Mount Carmel Church, Philadelphia, PA and eat the food served.

204.     Despite the knowledge of priests and leaders of the defendant Roman Catholic Archdiocese of Philadelphia that clergy under the direct supervision and control of the defendant Roman Catholic Archdiocese of Philadelphia were sexually abusing the plaintiff, no effective action was taken by the defendant Roman Catholic Archdiocese of Philadelphia to protect and safeguard the plaintiff from the sexual abuse perpetrated against him and the abuse continued.

**DEFENDANT ROMAN CATHOLIC DIOCESE OF CAMDEN KNOWINGLY PERMITTED OR ACQUIESCED TO THE SEXUAL ABUSE OF THE PLAINTIFF**

205.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

206.     In or about the calendar years of 1995 through 1996, at or about when the plaintiff was sixteen (16) years of age and in the eleventh (11th)  grade of school, the plaintiff was taken by his aunt, Ms. Annette Dickle, to St. Peter's Roman Catholic Church located in Merchantville, NJ to serve a mass performed by the Auxiliary Bishop of Camden James L. Shad.

207.    At the close of the mass, the plaintiff participated in the Roman Catholic practice of confession in the confessional box of St. Peter's Roman Catholic Church.

208.    The confession of the plaintiff was officiated by Monsignor Thomas Guenther.

209.    In the confessional box, the plaintiff reported to Monsignor Thomas Guenther, that Reverend Charles E. Kuhl and Reverend Walter N. Smith had been and were subjecting him to sexually provocative activities and had performed illegal sexual acts upon the plaintiff.

210.    Upon receiving the plaintiff's complaints that he was a victim of sexual abuse perpetrated by Reverend Charles E. Kuhl and Reverend Walter N. Smith, Monsignor Thomas Guenther brought the plaintiff's complaints to the attention of Auxiliary Bishop of Camden James L. Shad.

211.    At the close of the evening's church activity at St. Peter's Roman Catholic Church, with the plaintiff in the car, Monsignor Thomas Guenther drove Auxiliary Bishop of Camden James L. Shad to his residence at St. Mary's Retirement Home located in Cherry Hill, NJ.

212.    Monsignor Thomas Guenther then drove the plaintiff to the rectory of the Transfiguration Catholic Church located 445 Whitehorse Pike, West Collingswood, NJ where Monsignor Thomas Guenther was living in residence.

213.    Monsignor Thomas Guenther made the plaintiff feel safe, allowed the plaintiff to stay the night at the rectory of the Transfiguration Catholic Church, ate waffles and ice cream with the plaintiff, and relayed to the plaintiff that he would make certain that the church leadership was made aware of the sexual abuse which the plaintiff had been caused to suffer.

214.    The following day Monsignor Thomas Guenther drove the plaintiff to the residence of Auxiliary Bishop of Camden James L. Shad at St. Mary's Retirement Home located in Cherry Hill, NJ.

215.    While in the vicinity of Auxiliary Bishop of Camden Bishop James L. Shad's residence at St. Mary's Retirement Home, Monsignor Thomas Guenther, the plaintiff, and Auxiliary Bishop of Camden Bishop James L. Shad engaged in discussion regarding the sexual abuse which Reverend Charles E. Kuhl and Reverend Walter N. Smith were subjecting the plaintiff to endure.

216.    While in the vicinity of his residence at St. Mary's Retirement Home, in the presence of Monsignor Thomas Guenther, Auxiliary Bishop of Camden Bishop James L. Shad informed the plaintiff that he would notify the Bishop of Camden, Bishop James T. McHugh, that Reverend Charles E. Kuhl and Reverend Walter N. Smith were subjecting the plaintiff to sexually provocative activities and had performed illegal sexual acts upon the plaintiff.

217.    Despite the knowledge of priests and leaders of the defendant Roman Catholic Diocese of Camden that clergy under the direct supervision and control of the defendant Roman Catholic Diocese of Camden were sexually abusing the plaintiff, no effective action was taken by the defendant Roman Catholic Diocese of Camden to protect and safeguard the plaintiff from the sexual abuse perpetrated against him and the abuse continued.

### THE SCHEME OF THE DEFENDANTS TO CONCEAL THE ILLEGAL AND IMMORAL ACTS OF PEDOPHILIC OR EPHEBOPHILE PRIESTS

218.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

219.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew that certain ordained priests under their control and supervision, including Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, presented sustained, focused, and intense patterns of sexual arousal involving prepubescent children, such as the plaintiff.

220.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew that certain ordained priests under their control and supervision, including Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, were perpetrating child molestation and sexual assaults.

221.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew that sexually offending priests, including Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, typically had multiple victims and were unlikely to stop abusing children unless the opportunity was removed and the access to children restricted.

222.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden permitted diagnosed or recognized pedophile or ephebophile priests, including Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, unrestricted access to children by permitting them to continue in parish ministry.

223.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden knew that certain ordained priests under their control and supervision, including Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, engaged in the illegal and immoral predatory pedophilic acts.

224.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden engaged deliberate strategies to conceal known abuse of offending priests, such as Reverend Thomas D. Graham, Monsignor

Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, which included, among others:

(a)    Persuaded victims of abuse and their parents not to report the crimes committed by sexually abusive priests to police;

(b)    Did not report the abuse to law enforcement or civil authorities;

(c)    Avoided the involvement in law enforcement in connection with the complaints of clergy abuse;

(d)    Transferred known sexually abusive priests to other parishes when the threat of general scandal or a law suit seemed imminent;

(e)    Refused to inform or otherwise notify parishioners of a sexually abusive priests' background.

(f)    Successively transferred known sexually abusive priests to distant unsuspecting parishes where the offending priests' reputation for sexual abuse would not be known;

(g)    Refused to inform or otherwise notify parishioners of the reason for the transfer of sexually abusive priests from one parish to another.

(h)    Mislead parishioners about the reason for the transfer of sexually abusive priests from one parish to another.

(i)    Harbored sexually abusive priests transferred from other dioceses and parishes;

(j)    Shielded and enabled offending priests by transferring them to unsuspecting parishes;

(k)    Carefully avoided actions which would incriminate leaders of the Roman Catholic Archdiocese of Philadelphia Roman, the Catholic Diocese of Camden or offending priests;

(l)     Recorded information in diocese files in ways which masked the nature of reported abuse and the actions taken in response;

(m)     Manipulated psychological evaluations of sexually abusive priests to give false assurances of the fitness of offending priests;

(n)     Conducted non-investigations designed to avoid establishing the guilt of offending sexually abusive priests;

(o)     Labeled allegations leveled against sexually abusive priests as unfounded and not credible unless the offending priest happened to confess;

(p)     Created the atmosphere which tolerated sexual abuse committed by offending priests;

(q)     Discouraged clergy to report fellow priests whom they witnessed sexually abusing young victims;

(r)     Discouraged clergy to protect young victims whom they witnessed being sexually abused fellow priests;

(s)     Bullied and mislead victims of clergy sexual abuse and exploitation;

(t)     Commissioned agents to investigate victims seeking harmful information to discredit the victims;

(u)     Refused to acknowledge the abuse suffered by the victims;

(v)     Refusal to permit offending priests to provide statements of accounts of the accused sexual abuse and exploitation;

(w)     Upon receipt of a complaint of clergy sexual abuse, relied upon the consultation of attorneys who directed the taking of detailed statements from victims, gathered information about the victims' families, shared as little information as possible with the victims, and conducted no actual investigations;

(x)     Upon receipt of a complaint of clergy sexual abuse, relied upon the consultation of its attorneys and conducted non-investigations of the complaints of clergy abuse which predictably failed to establish the guilt of offending priests;

(y)     Maintained secret archive files regarding clergy sexual abuse allegations;

(z)     Despite awareness of credible complaints of clergy sexual abuse of minors, including rape, sodomy and exploitation, left the offending priests in assignments which allowed the offending priests to continue to prey on children and adolescents;

(aa)     Even in circumstances after an offending priest received therapy and evaluation from medical providers for sexual abuse and medical providers warned against the offending priests return to service, routinely returned the priest to assignment;

(bb)     In the event an accused priest confessed to committing sexual abuse, sent the offending priest to non-independent treatment facility, which the Archdiocese and Diocese had control or influence over, which routinely declared the offending priest cured and the Archdiocese and Dioceses hierarchy reassigned the offending priest to unsuspecting parishes;

(cc)     Upon receipt of a complaint of clergy sexual abuse, relied upon consultation of its attorneys to deem the complaints of clergy sexual abuse not credible unless the targeted priests confessed;

(dd)     Fielded victims' complaints of sexual abuse according to the instructions of the Archdiocese's and Dioceses' attorneys in an effort to avoid liability and scandal;

(ee)     Acted upon the legal advice of counsel in an effort to avoid liability and scandal, rather than confront the priest abusers;

(ff)     Suppressed the allegations of sex crimes against children committed by members of the clergy;

(gg)     Intimidated and silenced victims of clergy sexual abuse in an effort to fend

off potential civil law suits.

(hh)     Deliberately concealed offending priests' history of committing sexual abuse,

thereby placing persons, such as plaintiff at risk of sexual abuse.

*The Defendant Roman Catholic Roman Catholic Archdiocese of Philadelphia's*
*Transfer of Known Sexually Abusive Priest, Reverend Thomas D. Graham, to Other Parishes*
<u>*When the Threat of General Scandal or A Law Suit Seemed Imminent*</u>

225.     The transfer of assignment within the church organization and/or leave of absence

history imposed upon Reverend Thomas D. Graham by the defendant Roman Catholic Archdiocese

of Philadelphia, when the threat of general scandal or a law suit seemed imminent, presents as

follows:

(a)     Parochial Vicar at Saint Canicus Parish, Mahoney City, PA

(b)     Saint Catherine of Siena Parish, Reading, PA

(c)     Saint Monica Parish, Berwyn, PA

(d)     Saint Augustine Parish, Bridgeport, PA

(e)     Our lady of Fatima Parish, Secane, PA

(f)     Saint Mary of the Assumption Parish, Phoenixville, PA

(g)     Holy Family Parish, Philadelphia, PA

(h)     Saint Bartholomew Parish, Philadelphia, PA

(i)     Saint Francis DeSales Parish, Philadelphia, PA

(j)     Our Lady of Mount Carmel Parish, Philadelphia, PA

(k)     Saint Matthew Parish, Philadelphia, PA

(l)     Chaplain, Sacred Heart Manor, Philadelphia, PA

(m)     Chaplain, Saint Mary's Manor, Lansdale, PA

(n)     Reverend Thomas D. Graham retired in 1998

*The Defendant Roman Catholic Roman Catholic Archdiocese of Philadelphia's Transfer of*
*Known Sexually Abusive Priest, Monsignor Joseph J. Gallagher, to Other Parishes*
<u>*When the Threat of General Scandal or A Law Suit Seemed Imminent*</u>

226.    The transfer of assignment within the church organization and/or leave of absence history imposed upon Monsignor Joseph J. Gallagher by the defendant Roman Catholic Archdiocese of Philadelphia, when the threat of general scandal or a law suit seemed imminent, presents as follows:

| | | |
|---|---|---|
| (a) | Assumption, B.V.M. Philadelphia, PA | 1963-1965 |
| (b) | Cathedral Basilica of SS. Peter and Paul, Philadelphia, PA | 1965-1970 |
| (c) | St. Michael, Chester, PA | 1970-1974 |
| (d) | Chaplain, Serra Club of Philadelphia, PA | 1972-1974 |
| (e) | Ascension of Our Lord, Philadelphia, PA | 1974-1979 |
| (f) | Chaplain, Little Flower High School for Girls, Phila, PA | 1977-1979 |
| (g) | St. Monica, Philadelphia, PA | 1979-1983 |
| (h) | St. Mark, Bristol, PA | 1983-1990 |
| (i) | St. Richard, Philadelphia, PA | 1990-2006 |
| (j) | Retired | 2006 |
| (k) | St. Jerome, Philadelphia, PA (Assistant) | 2006-2011 |
| (l) | St. Timothy, Philadelphia, PA (Assistant) | 2006-2011 |
| (m) | St. Thomas Aquinas, Croyden, PA (Assistant) | 2006-2001 |
| (n) | Placed on administrative leave | 2011 |
| (o) | Determined unfit for ministry and permanently removed | 2013 |

*The Defendant Roman Catholic Diocese of Camden's Transfer of*
*Known Sexually Abusive Priest, Reverend Charles E. Kuhl, to Other Parishes*
*When the Threat of General Scandal or A Law Suit Seemed Imminent*

227.    The transfer of assignment within the church organization and/or leave of absence history imposed upon Reverend Charles E. Kuhl by the defendant Roman Catholic Diocese of Camden, when the threat of general scandal or a law suit seemed imminent, presents as follows:

| | | |
|---|---|---|
| (a) | O.L. Star of the Sea, Atlantic City, NJ | 1955-1956 |
| (b) | Queen of Heaven, Erlton, NJ | 1957-1959 |
| (c) | St. Ann, North Wildwood, NJ | 1960-1961 |
| (d) | St. Luke, Stratford, NJ | 1962 |
| (e) | Camden; O.L. of Mt. Carmel, Berlin, NJ | 1963 |
| (f) | St. Peter, Merchantville, NJ | 1964-1965 |
| (g) | Camden Catholic High School, Camden, NJ | 1966 |
| (h) | Our Lady of Lourdes Nursing School, Camden, NJ | |
| (i) | Paul VI High School, Haddon Township, NJ | 1967-1969 |
| (j) | St. Michael, Atlantic City, NJ | |
| (k) | St. Bridget, Glassboro, NJ | 1970-1972 |
| (l) | Sick Leave | 1973 |
| (m) | Leave of absence | 1974-1978 |
| (n) | Unknown | 1979-1993 |
| (o) | St. Anthony, Waterford, NJ | 1994-1997 |
| (p) | Retired | 1998-2002 |
| (q) | Mater Ecclesiae Church in Berlin, NJ | |
| (r) | Unknown | 2003-2019 |

*The Defendant Roman Catholic Diocese of Camden's Transfer of*
*Known Sexually Abusive Priest, Reverend Walter N. Smith to Other Parishes*
*When the Threat of General Scandal or A Law Suit Seemed Imminent*

228.    The transfer of assignment within the church organization and/or leave of absence history imposed upon Reverend Walter N. Smith by the defendant Roman Catholic Diocese of Camden, when the threat of general scandal or a law suit seemed imminent, presents as follows:

| | | |
|---|---|---|
| (a) | St. Casimir, Woodbine, NJ | |
| (b) | Our Lady of the Angels, Cape May Court House, NJ | |
| (c) | St. Luke, Stratford, NJ | |
| (d) | Immaculate Conception, Camden, NJ | 1973 |
| (e) | Immaculate Conception, Bridgeton, NJ | 1974-1976 |
| (f) | St. Mary, Williamstown, NJ | 1977-1981 |
| (g) | Most Holy Redeemer, Westville Grove, NJ | 1982-1984 |
| (h) | St. Anthony of Padua, Hammonton, NJ | 1985-1987 |
| (i) | St. Ann, North Wildwood, NJ | 1988-1991 |
| (j) | St. Mary, Gloucester, NJ | 1992-1997 |
| (k) | Sacred Heart, Vineland, NJ | |
| (l) | St. Michael, Gibbstown, NJ | |
| (m) | St. Patrick, Woodbury, NJ | 2001 |
| (n) | Chaplain Cooper University Hospital, Camden, NJ | |
| (o) | Chaplain Newcomb Hospital, Vineland, NJ | |
| (p) | Chaplain Underwood Memorial Hospital, Woodbury, NJ | |

229.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden's scheme to conceal the illegal and immoral acts of pedophilic priests and practice of the successive transfers of known pedophilic

priests, such as Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith,  had the effect of maintaining the priests' good standing, their revered authority and access to children.

230.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden exercised purposeful decisions and implemented policies designed to leave known sexually abusive priests, such as Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith, in positions which allowed the known sexually abusive priests to continue to assault the Church's young, such as the plaintiff, rather than advance steps necessary to stop and prevent the abuses.

231.    The aforementioned purposeful decisions and carefully implemented policies effected by the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden to conceal the crimes of known sexually abusive priests, such as Reverend Thomas D. Graham, Monsignor Joseph J. Gallagher, Reverend Charles E. Kuhl, and Reverend Walter N. Smith,  facilitated the abuse perpetrated upon children, such as the plaintiff.

232.    The aforementioned purposeful decisions and carefully implemented deliberate policies effected by the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden allowed children, such as the plaintiff, to suffer molestations, rape, lifelong shame and despair.

233.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden acted with a calloused and reckless indifference to the welfare of children, such as the plaintiff.

234.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden acted in a willful, wanton and grossly negligent manner in connection with the welfare of children, such as the plaintiff.

235.    The aforementioned actions of the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden represent aggravated wrongful conduct within the meaning of the Charitable Immunity Act, N.J. Stat. Ann. §§ 2A:53-7 to -11.

## THE DEFENDANTS' OFFER AND PAYMENT OF THE COSTS ASSOCIATED WITH MENTAL HEALTH COUNSELING SERVICES RECEIVED BY THE PLAINTIFF

236.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

237.    The defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden each have acknowledged that the plaintiff was the victim of sexual abuse and exploitation committed against him by aforementioned sexually abusive priests at times when the offending priests were subject to the authority, dominion, and control of the defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden.

238.    The defendant Roman Catholic Archdiocese of Philadelphia and the defendant Roman Catholic Diocese of Camden have each acknowledged that sexual abuse and exploitation committed against the plaintiff by aforementioned sexually abusive priests occurred on property owned, occupied, or controlled by the defendants.

239.    The defendant Roman Catholic Archdiocese of Philadelphia extended an offer to the plaintiff to satisfy payment of the costs associated with mental health counseling sessions to treat

the mental health injury suffered by the plaintiff by reason of the sexual abuse and exploitation perpetrated upon him by aforementioned sexually abusive priests.

240.    The defendant Roman Catholic Diocese of Camden paid for the cost associated with mental health counseling sessions to treat the mental health injury suffered by the plaintiff by reason of the sexual abuse and exploitation perpetrated upon him by the aforementioned sexually abusive priests.

## COUNT I
## VIOLATION OF NEW JERSEY CHILD SEXUAL ABUSE ACT, N.J.S.A. § 2A:61B-1
## PRIVATE RIGHT OF ACTION AGAINST A PASSIVE ABUSER
## (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

241.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

242.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia was a person within the meaning of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

243.    At all times material hereto, the parents of the plaintiff transferred to the defendant Roman Catholic Archdiocese of Philadelphia the authority to act as a caregiver and guardian of the plaintiff, taking on all or some of the responsibilities of a parent.

244.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia, through its agents, employees, and servants, acted as a temporary caregiver or guardian of the plaintiff, taking on all or some of the responsibilities of a parent.

245.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia, through its agents, employees, and servants, provided food, shelter, comfort, guidance and essentials to the plaintiff for extended periods of time.

246.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia, through its agents, employees, and servants, stood *in loco parentis* to the plaintiff within the meaning of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

247.    At all times material hereto, the defendant the Roman Catholic Archdiocese of Philadelphia was a passive abuser within the meaning of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

248.    With a deliberate indifference to the welfare of the plaintiff, the defendant Roman Catholic Archdiocese of Philadelphia knowingly permitted the sexual abuse of the plaintiff by another person.

249.    With a deliberate indifference to the welfare of the plaintiff, the defendant Roman Catholic Archdiocese of Philadelphia knowingly acquiesced in the sexual abuse of the plaintiff by another person.

250.    The defendant Roman Catholic Archdiocese of Philadelphia knowingly violated the provisions of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

251.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knowingly took action to permit and acquiesce in the sexual abuse of the plaintiff, and other victims, by another person.

252.    At all times material hereto, policy-makers of the defendant Roman Catholic Archdiocese of Philadelphia passively condoned, or otherwise ratified the sexual abuse of the plaintiff, and other victims, by another person.

253.    The policy, custom, or practice of the defendant Roman Catholic Archdiocese of Philadelphia to knowingly permit and acquiesce in the sexual abuse of the plaintiff, and other victims, by another person, created a climate which, at a minimum, tolerated unsafe, dangerous, immoral, and criminal behavior.

254.    With a deliberate indifference to the welfare of the plaintiff, and other such victims, it has been the policy, custom, or practice of the defendant Roman Catholic Archdiocese of Philadelphia to systematically refuse to implement strategies known to effectively prevent sexual abuse, and to protect sexual abuse victims.

255.    The action taken to systematically refuse to implement strategies known to effectively prevent sexual abuse and to protect sexual abuse victims was directed, encouraged, approved, condoned, acquiesced or otherwise ratified by the defendant Roman Catholic Archdiocese of Philadelphia's policy-makers.

256.    The policy, custom, or practice of the defendant Roman Catholic Archdiocese of Philadelphia's policy-makers not to take effective action to prevent known sexual abuse and to protect sexual abuse victims created unsafe, dangerous, immoral, and criminal practices.

257.    The defendant Roman Catholic Archdiocese of Philadelphia knew that it was practically certain that victims of sexual abuse, such as the plaintiff, would suffer harm and injury as a result of operating under the above described customs, practices, or policies which permitted and acquiesced in the sexual abuse of the plaintiff by another person.

258.    The defendant Roman Catholic Archdiocese of Philadelphia operated under customs, practices, or policies which demonstrate a calloused disregard and deliberate indifference to the welfare of the plaintiff, and other sexual abuse victims.

259.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's calloused, reckless, willful, wanton, and intentional actions, the plaintiff was caused to suffer  physical pain, discomfort, trauma, humiliation, embarrassment, emotional distress, sleeplessness, anxiety, inability to perform simple activities of daily living, depression characterized by feelings of despair, hopelessness, and despondency, some or all of which may be permanent and which may continue indefinitely into the future.

260.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of

Philadelphia's calloused, reckless, willful, wanton and intentional actions, the plaintiff has been required to undergo hospitalization, outpatient healthcare, and medical evaluations and may require other medical attention into the future.

261.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's calloused, reckless, willful, wanton and intentional actions, the plaintiff incurred medical expenses for diagnosis, treatment and care in an effort to be cured of the injury resulting from sexual abuse and may incur additional medical expenses continuing on into the future.

262.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's calloused, reckless, willful, wanton and intentional actions, the plaintiff has been caused to expend various and diverse sums of money in an effort to cure himself of the injury resulting from sexual abuse and may incur additional medical expenses continuing on into the future.

263.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's calloused, reckless, willful, wanton and intentional actions, the plaintiff has been caused to suffer an impairment of his mental and physical health.

264.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's calloused, reckless, willful, wanton and intentional actions, the plaintiff has been caused to suffer a loss of life's pleasures which may continue indefinitely into the future.

265.    As a direct and proximate result of the above described affirmative action of the defendant Roman Catholic Archdiocese of Philadelphia, the plaintiff has been caused to incur attorney's fees and costs prosecuting this matter.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded actual damages as proven as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

II.      That plaintiff be awarded punitive damages as proven as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

III.     That plaintiff be awarded reasonable attorney's fees as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

IV.      That plaintiff be awarded the cost of prosecuting this claim as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

V.       That plaintiff be awarded reasonable expert fees as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

VI.      That plaintiff be awarded interest and damages for prejudgment delay;

VII.     That plaintiff be awarded further relief as this Court may deem appropriate.


**COUNT II**
**VIOLATION OF NEW JERSEY CHILD SEXUAL ABUSE ACT, N.J.S.A. § 2A:61B-1**
**(Plaintiff v Roman Catholic Diocese of Camden)**

266.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

267.    At all times material hereto, the defendant the Roman Catholic Diocese of Camden was a person within the meaning of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

268.    At all times material hereto, the parents of the plaintiff transferred to the defendant the Roman Catholic Diocese of Camden the authority to act as a caregiver and guardian of the plaintiff, taking on all or some of the responsibilities of a parent.

269.    At all times material hereto, the defendant the Roman Catholic Diocese of Camden, through its agents, employees, and servants, acted as a temporary caregiver or guardian of the plaintiff, taking on all or some of the responsibilities of a parent.

270.    At all times material hereto, the defendant the Roman Catholic Diocese of Camden, through its agents, employees, and servants, provided food, shelter, comfort, guidance and essentials to the plaintiff for extended periods of time.

271.    At all times material hereto, the defendant the Roman Catholic Diocese of Camden, through its agents, employees, and servants, stood *in loco parentis* to the plaintiff within the meaning of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

272.    At all times material hereto, the defendant the Roman Catholic Diocese of Camden was a passive abuser within the meaning of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

273.    With a deliberate indifference to the welfare of the plaintiff, the defendant the Roman Catholic Diocese of Camden knowingly permitted the sexual abuse of the plaintiff by another person.

274.    With a deliberate indifference to the welfare of the plaintiff, the defendant the Roman Catholic Diocese of Camden knowingly acquiesced in the sexual abuse of the plaintiff by another person.

275.    The defendant the Roman Catholic Diocese of Camden knowingly violated the provisions of the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1.

276.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knowingly took action to permit and acquiesce in the sexual abuse of the plaintiff, and other victims, by another person.

277.    At all times material hereto, policy-makers of the defendant Roman Catholic Diocese of Camden passively condoned, or otherwise ratified the sexual abuse of the plaintiff, and other victims, by another person.

278.    The policy, custom, or practice of the defendant Roman Catholic Diocese of Camden to knowingly permit and acquiesce in the sexual abuse of the plaintiff, and other victims, by another person, created a climate which, at a minimum, tolerated unsafe, dangerous, immoral, and criminal behavior.

279.    With a deliberate indifference to the welfare of the plaintiff, and other such victims, it has been the policy, custom, or practice of the defendant the Roman Catholic Diocese of Camden to systematically refuse to implement strategies known to effectively prevent sexual abuse and to protect sexual abuse victims.

280.    The action taken to systematically refuse to implement strategies known to effectively prevent sexual abuse and to protect sexual abuse victims was directed, encouraged, approved, condoned, acquiesced or otherwise ratified by the defendant Roman Catholic Diocese of Camden's policy-makers.

281.    The policy, custom, or practice of the defendant Roman Catholic Diocese of Camden's policy-makers not to take effective action to prevent known sexual abuse and to protect sexual abuse victims created unsafe, dangerous, immoral, and criminal practices.

282.    The defendant Roman Catholic Diocese of Camden knew that it was practically certain that victim of sexual abuse, such as the plaintiff, would suffer harm and injury as a result of operating under the above described customs, practices, or policies which permitted or acquiesced in the sexual abuse of the plaintiff by another person.

283.    The above described customs, practices, or policies demonstrate a calloused disregard and deliberate indifference on the part of the policy makers of the defendant Roman Catholic Diocese of Camden to the welfare of the plaintiff, and other sexual abuse victims.

284.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's calloused, reckless, willful, wanton and intentional actions, the plaintiff has been caused to suffer those

injuries, harms, losses, and expenses aforementioned.

285.    As a direct and proximate result of the above described affirmative action of the defendant Roman Catholic Diocese of Camden, the plaintiff has been caused to incur attorney's fees and costs prosecuting this matter.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.    That plaintiff be awarded actual damages as proven as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

II.    That plaintiff be awarded punitive damages as proven as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

III.    That plaintiff be awarded reasonable attorney's fees as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

IV.    That plaintiff be awarded the cost of prosecuting this claim as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

V.    That plaintiff be awarded reasonable expert fees as provided for pursuant to N.J.S.A. § 2A:61B-1(h);

VI.    That plaintiff be awarded interest and damages for prejudgment delay;

VII.    That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT III
## NEGLIGENT HIRING AND RETENTION
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

286.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

287.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that the offending priests' employment directly involved contact with children, such as the plaintiff.

288.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that by virtue of its employment of the offending priests it furnished the offending priests with opportunity to have contact with children, such as the plaintiff.

289.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that by virtue of its employment of the offending priests, the offending priests would have opportunity to have unsupervised contact with children, such as the plaintiff.

290.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that by virtue of its employment of the offending priests, that the offending priests would take custody of children, such as the plaintiff, for prolonged periods of time.

291.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that by virtue of its employment of the offending priests that while in the custody and presence of the offending priests children, such as the plaintiff, would be required to disrobe.

292.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that by virtue of its employment of the offending priests that the offending priests' contact with children, such as the plaintiff, would involve unsupervised overnight stays.

293.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that the priesthood attracted men with pedophile tendencies and who posed a risk to the safety of children.

294.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that the access to vulnerable children at the trust and authority placed in the clergy makes the priesthood an enticing vocation for pedophiles and others seeking to exploit children.

295.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that the plaintiff and other young children in its church were vulnerable and potential victims of sexual abuse.

296.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia should have implemented reasonable screening of priest candidates to determine if they posed a safety risk to children before assigning a priest the responsibility to perform the duties of priesthood.

297.    At the time of Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher's assignment to perform the duties of a priest, the defendant Roman Catholic Archdiocese of Philadelphia knew or should have known to exercise reasonable care and screening to protect against the pedophile tendencies and safety risk which Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher posed to children.

298.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or had reason to know of the particular unfitness, incompetence or dangerous attributes which

its employees or ostensible agents Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher presented.

299.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or had reason to know that the qualities of employees or ostensible agents Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher created a risk of harm to children, such as the plaintiff.

300.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia could reasonably have foreseen that the qualities of employees or ostensible agents Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher created a risk of harm to children, such as the plaintiff.

301.    The defendant Roman Catholic Archdiocese of Philadelphia owed a duty of care to the plaintiff to ensure that the priests it selected, employed, and retained to perform the duties of priesthood in its organization did not present a risk of danger of sexually abusing or exploiting children, such as the plaintiff.

302.    With a willful, wanton and reckless indifference to the welfare of the plaintiff, knowing that Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher presented a foreseeable risk of harm to children, such as the plaintiff, the defendant Roman Catholic Archdiocese of Philadelphia breached the duty it owed to the plaintiff in the following ways:

(a)    Intentionally and recklessly chose not to implement polices and procedures to reasonably screen priests, such as Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher, before assigning them to the duties of priesthood to determine if the priest candidate possessed pedophilic tendencies which posed a safety risk to children;

(b)    Intentionally and recklessly chose not to conduct a thorough and adequate background check of Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher before

assigning them to the duties of priesthood to determine if the priest candidate possessed pedophilic tendencies which posed a safety risk to children;

(c)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation regarding the sexual history and propensities of Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher;

(d)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation as to whether Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher had any inappropriate sexual interest in young boys;

(e)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation regarding the sexual improprieties of Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher with young boys;

(f)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation regarding the proclivities of Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher to sexually assault young boys;

(g)     Assigned Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher to perform duties of priesthood knowing of the particular risk to the safety of children which they posed.

(h)     Retained Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher to perform duties of priesthood knowing of the particular risk to the safety of children which they posed.

(i)     Retained Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher to perform duties of priesthood knowing that they had sexually abused and exploited children.

303.    As a direct and proximate result of the defendant Roman Catholic Archdiocese's grossly negligent and reckless hiring and retention of its employees or ostensible agents Reverend Thomas

D. Graham and Monsignor Joseph J. Gallagher the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT IV
## NEGLIGENT HIRING AND RETENTION
### (Plaintiff v Roman Catholic Diocese of Camden)

304.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

305.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that the offending priests' employment directly involved contact with children, such as the plaintiff.

306.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that by virtue of its employment of the offending priests it furnished the offending priests with opportunity to have contact with children, such as the plaintiff.

307.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that by virtue of its employment of the offending priests, the offending priests would have opportunity to have unsupervised contact with children, such as the plaintiff.

308.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that by virtue of its employment of the offending priests, that the offending priests would take custody of children, such as the plaintiff, for prolonged periods of time.

309.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that by virtue of its employment of the offending priests that while in the custody and presence of the offending priests, children such as the plaintiff, would be required to disrobe.

310.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that by virtue of its employment of the offending priests that the offending priests' contact with children, such as the plaintiff, would involve unsupervised overnight stays.

311.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that the priesthood attracted men with pedophile tendencies and who posed a risk to the safety of children.

312.    At all times material hereto, Roman Catholic Diocese of Camden knew or reasonably should have known that the access to vulnerable children at the trust and authority placed in the clergy makes the priesthood an enticing vocation for pedophiles and others seeking to exploit children.

313.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that the plaintiff and other young children in its church were vulnerable and potential victims of sexual abuse.

314.    At all times material hereto, Roman Catholic Diocese of Camden should have implemented reasonable screening of priest candidates to determine if they posed a safety risk to children before assigning a priest the responsibility to perform the duties of priesthood.

315.    At the time of Reverend Charles E. Kuhl and Reverend Walter N. Smith's assignment to perform the duties of a priest, the defendant Roman Catholic Diocese of Camden knew or should have known to exercise reasonable care and screening to protect against the pedophile tendencies and safety risk which Reverend Charles E. Kuhl and Reverend Walter N. Smith posed to children.

316.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or had reason to know of the particular unfitness, incompetence or dangerous attributes which its employees or ostensible agents Reverend Charles E. Kuhl and Reverend Walter N. Smith presented.

317.    At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or had reason to know that the qualities of employees or ostensible agents Reverend Charles E. Kuhl and Reverend Walter N. Smith created a risk of harm to children, such as the plaintiff.

318.    At all times material hereto, the defendant Roman Catholic Diocese of Camden could reasonably have foreseen that the qualities of employees or ostensible agents Reverend Charles E. Kuhl and Reverend Walter N. Smith created a risk of harm to children, such as the plaintiff.

319.    The defendant Roman Catholic Diocese of Camden owed a duty of care to the plaintiff to ensure that the priests it selected, employed, and retained to perform the duties of priesthood in its organization did not present a risk of danger of sexually abusing or exploiting children, such as the plaintiff.

320.    With a willful, wanton and reckless indifference to the welfare of the plaintiff, knowing that Reverend Charles E. Kuhl and Reverend Walter N. Smith presented a foreseeable risk of harm to children, such as the plaintiff, the defendant Roman Catholic Diocese of Camden breached the duty of care it owed to the plaintiff in the following ways:

(a)    Intentionally and recklessly chose not to implement polices and procedures to reasonably screen priests, such as Reverend Charles E. Kuhl and Reverend Walter N. Smith,

59

before assigning them to the duties of priesthood to determine if the  priest candidate possessed pedophilic tendencies which posed a safety risk to children;

(b)     Intentionally and recklessly chose not to conduct a thorough and adequate background check of Reverend Charles E. Kuhl and Reverend Walter N. Smith, before assigning them to the duties of priesthood to determine if the priest candidate possessed pedophilic tendencies which posed a safety risk to children;

(c)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation regarding the sexual history and propensities of Reverend Charles E. Kuhl and Reverend Walter N. Smith;

(d)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation as to whether Reverend Charles E. Kuhl and Reverend Walter N. Smith had any inappropriate sexual interest in young boys;

(e)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation regarding the sexual improprieties of Reverend Charles E. Kuhl, and Reverend Walter N. Smith with young boys;

(f)     Intentionally and recklessly chose not to conduct a thorough and adequate investigation regarding the proclivities of Reverend Charles E. Kuhl and Reverend Walter N. Smith to sexually assault young boys;

(g)     Assigned Reverend Charles E. Kuhl and Reverend Walter N. Smith to perform duties of priesthood knowing of the particular risk to the safety of children which they posed;

(h)     Retained Reverend Charles E. Kuhl and Reverend Walter N. Smith to perform duties of priesthood knowing of the particular risk to the safety of children which they posed;

(i)      Retained Reverend Charles E. Kuhl and Reverend Walter N. Smith to perform duties of priesthood knowing that they had sexually abused and exploited children.

321.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's grossly negligent and reckless hiring and retention of its employees or ostensible agents Reverend Charles E. Kuhl and Reverend Walter N. Smith the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT V
## NEGLIGENT SUPERVISION
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

322.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

323.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known of the particular risk posed to the safety of children by Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher by reason of their history of sexual abuse of children and behavior indicative of an intent to isolate, groom, and facilitate the sexual abuse of young boys, in particular the plaintiff.

324.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that the use of its premises involved the presence of children.

325.     The defendant Roman Catholic Archdiocese of Philadelphia owed a duty to exercise a heightened degree to ensure that young children, such as the plaintiff, furnished to the company of offending priests were safeguarded.

326.     The defendant Roman Catholic Archdiocese of Philadelphia owed a duty to exercise a heightened degree of continuing control and supervision over its premises to ensure that young children furnished to the company of offending priests were safeguarded.

327.     The defendant Roman Catholic Archdiocese of Philadelphia owed a duty to exercise a heightened degree of continuing control and supervision over the contact offending priests had with young children to ensure that the children were safeguarded.

328.     At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia knew or reasonably should have known that the failure to supervise or train offending priests, such as Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher,  in a certain way would create a risk of harm that they would sexually abuse of young boys, in particular the plaintiff.

329.     The number of children with whom the offending priests had prolonged contact, such as the plaintiff, was sufficiently small so that the abuse could not have continued without notice.

330.     With a willful, wanton and reckless indifference to the welfare of the plaintiff, knowing that Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher presented a foreseeable risk of harm to children, such as the plaintiff, the defendant Roman Catholic Archdiocese of Philadelphia breached the duty it owed to the plaintiff in the following ways:

(a)     Intentionally and recklessly chose not to observe and supervise the relationship between the plaintiff and Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher;

(b)     Intentionally and recklessly chose not to implement policies and procedures to require supervision and observation of the relationship which developed between the plaintiff and

Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher;

(c)  Intentionally and recklessly chose not to prevent Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher from sexually abusing the plaintiff on its premises or with instrumentalities under its control;

(d)  Intentionally and recklessly chose not to recognize the conduct Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher described herein as creating a risk of sexual abuse of children;

(e)  Intentionally and recklessly chose not to investigate and act upon the plaintiff's complaints that he was a victim of sexual abuse;

(f)  Intentionally and recklessly choosing not to investigate and act upon complaints of other victims who complained of sexual abuse perpetrated upon them by Reverend Thomas D. Graham and/or Monsignor Joseph J. Gallagher;

(g)  Intentionally and recklessly chose not to identify Reverend Thomas D. Graham and/or Monsignor Joseph J. Gallagher as sexual abusers;

(h)  Intentionally chose not to provide adequate security measures and a safe environment on its premises to safeguard the plaintiff from being sexually abused by its employees or ostensible agents Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher;

(i)  Failed to implement effective rudimentary reporting procedures that would have informed it of offending priests' misconduct;

(j)  Grossly disregarded information, within its knowledge, possession and control or easily accessible, that called for scrutiny of offending priests' activities involving children.

331.  Defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff for damages pursuant to the provisions Section 317 of the Restatement (Second) of Torts.

332.     As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's reckless, willful, and wanton failure to train and supervise its employees or ostensible agents Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher the plaintiff was sexually abused and harmed by Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher

333.     As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's grossly negligent, reckless, willful, and wanton failure to train and supervise its employees or ostensible agents Reverend Thomas D. Graham and Monsignor Joseph J. Gallagher the plaintiff was caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.       That plaintiff be awarded compensatory damages as proven at trial;

II.      The plaintiff be awarded punitive damages;

III.     That plaintiff be awarded interest and damages for prejudgment delay;

IV.      That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VI
## NEGLIGENT SUPERVISION
### (Plaintiff v Roman Catholic Diocese of Camden)

334.     Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

335.     At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known of the particular risk posed to the safety of children by Reverend Charles E. Kuhl and Reverend Walter N. Smith by reason of their history of sexual abuse of children and behavior indicative of an intent to isolate, groom, and facilitate the sexual abuse of young boys, in particular the plaintiff.

336.     At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that the use of its premises involved the presence of children.

337.     The defendant Roman Catholic Diocese of Camden owed a duty to exercise a heightened degree to ensure that young children, such as the plaintiff, furnished to the company of offending priests were safeguarded.

338.     The defendant Roman Catholic Diocese of Camden owed a duty to exercise a heightened degree of continuing control and supervision over its premises to ensure that young children furnished to the company of offending priests were safeguarded.

339.     The defendant Roman Catholic Diocese of Camden owed a duty to exercise a heightened degree of continuing control and supervision over the contact offending priests had with young children to ensure that the children were safeguarded.

340.     At all times material hereto, the defendant Roman Catholic Diocese of Camden knew or reasonably should have known that the failure to supervise or train offending priests, such as Reverend Charles E. Kuhl and Reverend Walter N. Smith,  in a certain way would create a risk of harm that they would sexually abuse of young boys, in particular the plaintiff.

341.     The number of children with whom the offending priests had prolonged contact, such as the plaintiff, was sufficiently small so that the abuse could not have continued without notice.

342.     With a willful, wanton and reckless indifference to the welfare of the plaintiff, knowing that Reverend Charles E. Kuhl and Reverend Walter N. Smith presented a foreseeable risk of harm to children, such as the plaintiff, the defendant Roman Catholic Diocese of Camden breached the duty it owed to the plaintiff in the following ways:

(a)     Intentionally and recklessly chose not to observe and supervise the relationship which developed between the plaintiff and Reverend Charles E. Kuhl and Reverend Walter N. Smith;

(b)     Intentionally and recklessly chose not to implement policies and procedures to require supervision and observation of the relationship between the plaintiff, Reverend Charles E. Kuhl, and Reverend Walter N. Smith;

(c)     Intentionally and recklessly chose not to prevent Reverend Charles E. Kuhl and Reverend Walter N. Smith from sexually abusing the plaintiff on its premises or with instrumentalities under its control;

(d)     Intentionally and recklessly chose not to recognize the conduct Reverend Charles E. Kuhl and Reverend Walter N. Smith described herein as creating a risk of sexual abuse of children;

(e)     Intentionally and recklessly chose not to investigate and act upon the plaintiff's complaints that he was a victim of sexual abuse;

(f)     Intentionally and recklessly chose not to investigate and act upon complaints of other victims who complained of sexual abuse perpetrated upon them by Reverend Charles E. Kuhl and Reverend Walter N. Smith;

(g)     Intentionally and recklessly chose not to identify Reverend Charles E. Kuhl and Reverend Walter N. Smith as sexual abusers;

(h)     Intentionally chose not to provide adequate security measures and a safe environment on its premises to safeguard the plaintiff from being sexually abused by its employees or ostensible agents Reverend Charles E. Kuhl and Reverend Walter N. Smith;

(i)     Failed to implement effective rudimentary reporting procedures that would have informed it of offending priests' misconduct;

(j)     Grossly disregarded information, within its knowledge, possession and control or easily accessible, that called for scrutiny of offending priests' activities involving children.

343.     Defendant Roman Catholic Diocese of Camden is liable to the plaintiff for damages pursuant to the provisions Section 317 of the Restatement (Second) of Torts.

344.     As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's grossly negligent, reckless, willful, and wanton failure to supervise its employees or ostensible agents Reverend Charles E. Kuhl, and Reverend Walter N. Smith the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.     That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.     That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VII
## GROSS NEGLIGENCE – FAILURE TO PROTECT AND SAFEGUARD
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

345.     Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

346.     At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia owed the plaintiff a duty of care to provide protection and use care to safeguard the welfare of the plaintiff.

347.     At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia confided the performance of a duty of care to provide protection and use care to safeguard the welfare of the plaintiff to a servant, employee, representative or agent.

348.     The defendant Roman Catholic Archdiocese of Philadelphia's servant, employee, representative or agent grossly and recklessly failed to perform the duty or otherwise breached the duty of care owed to the plaintiff by the defendant Roman Catholic Archdiocese of Philadelphia to provide protection and use care to safeguard the welfare of the plaintiff.

349.     The defendant Roman Catholic Archdiocese of Philadelphia's servant, employee, representative or agent grossly and recklessly failed to perform the duty or otherwise breached the duty of care owed to the plaintiff as a result of acting with an intent to protect pedophile priests and passively facilitate the sexual abuse of the plaintiff.

350.     The defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff for damages pursuant to the provisions Section 314 of the Restatement (Second) of Torts.

351.     As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's grossly negligent, reckless, willful, and wanton failure to provide protection and use care to safeguard the welfare of the plaintiff the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VIII
## GROSS NEGLIGENCE – FAILURE TO PROTECT AND SAFEGUARD
### (Plaintiff v Roman Catholic Diocese of Camden)

352.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

353.    At all times material hereto, the defendant Roman Catholic Diocese of Camden owed the plaintiff a duty of care to provide protection and use care to safeguard the welfare of the plaintiff.

354.    At all times material hereto, the defendant Roman Catholic Diocese of Camden confided the performance of a duty of care to provide protection and use care to safeguard the welfare of the plaintiff to a servant, employee, representative or agent.

355.    The defendant Roman Catholic Diocese of Camden's servant, employee, representative or agent grossly and recklessly failed to perform the duty or otherwise breached the duty of care owed to the plaintiff by the defendant Roman Catholic Diocese of Camden to provide protection and use care to safeguard the welfare of the plaintiff.

356.    The defendant Roman Catholic Diocese of Camden's servant, employee, representative or agent grossly and recklessly failed to perform the duty or otherwise breached the duty of care owed to the plaintiff as a result of acting with an intent to protect pedophile priests and passively facilitate the sexual abuse of the plaintiff.

357.    The defendant Roman Catholic Diocese of Camden is liable to the plaintiff for damages pursuant to the provisions Section 314 of the Restatement (Second) of Torts.

358.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's grossly negligent, reckless, willful, and wanton failure to provide protection and use care to safeguard the welfare of the plaintiff the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the

defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

359.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

360.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia owed the plaintiff a duty of care not to engage in intentional or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

361.    The defendant Roman Catholic Archdiocese of Philadelphia breached the duty of care owed to the plaintiff as a result of acting with an intent to protect pedophile priests and passively facilitate the sexual abuse of the plaintiff.

362.    The defendant Roman Catholic Archdiocese of Philadelphia acted intentionally with a reckless and deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

363.    The conduct of the defendant Roman Catholic Archdiocese of Philadelphia was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

364.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's intentional, reckless, willful, and wanton actions the plaintiff has been caused to suffer

emotional distress that is so severe that no reasonable person could be expected to endure it.

365.    The conduct of the defendant Roman Catholic Archdiocese of Philadelphia violated the provisions of the Section 46 of the Restatement (Second) of Torts.

366.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v Roman Catholic Diocese of Camden)

367.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

368.    At all times material hereto, the defendant Roman Catholic Diocese of Camden owed the plaintiff a duty of care not to engage in intentional or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

369.    The defendant Roman Catholic Diocese of Camden breached the duty of care owed to the plaintiff as a result of acting with an intent to protect pedophile priests and passively facilitate the sexual abuse of the plaintiff.

370.    The defendant Roman Catholic Diocese of Camden acted intentionally with a reckless and deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

371.    The conduct of the defendant Roman Catholic Diocese of Camden was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

372.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's intentional, reckless, willful, and wanton actions the plaintiff has been caused to suffer emotional distress that is so severe that no reasonable person could be expected to endure it.

373.    The conduct of the defendant Roman Catholic Diocese of Camden violated the provisions of the Section 46 of the Restatement (Second) of Torts.

374.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's intentional, reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

375.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

376.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia owed the plaintiff a duty of care not to engage in negligent, reckless, or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

377.    The defendant Roman Catholic Archdiocese of Philadelphia breached the duty of care owed to the plaintiff as a result of acting with an intent to protect pedophile priests and passively facilitate the sexual abuse of the plaintiff.

378.    The defendant Roman Catholic Archdiocese of Philadelphia acted grossly negligent, and with a reckless and deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

379.    The conduct of the defendant Roman Catholic Archdiocese of Philadelphia was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

380.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's grossly negligent and reckless actions the plaintiff has been caused to suffer emotional distress that is so severe that no reasonable person could be expected to endure it.

381.    The conduct of the defendant Roman Catholic Archdiocese of Philadelphia violated the provisions of the Section 46 of the Restatement (Second) of Torts.

382.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's grossly negligent and reckless actions the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XII
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v Roman Catholic Diocese of Camden)

383.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

384.    At all times material hereto, the defendant Roman Catholic Diocese of Camden owed the plaintiff a duty of care not to engage in negligent, reckless, or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

385.    The defendant Roman Catholic Diocese of Camden breached the duty of care owed to the plaintiff as a result of acting with an intent to protect pedophile priests and passively facilitate the sexual abuse of the plaintiff.

386.    The defendant Roman Catholic Diocese of Camden acted grossly negligent, and with a reckless and deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

387.    The conduct of the defendant Roman Catholic Diocese of Camden was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

388.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's

grossly negligent and reckless actions the plaintiff has been caused to suffer emotional distress that is so severe that no reasonable person could be expected to endure it.

389.    The conduct of the defendant Roman Catholic Diocese of Camden violated the provisions of the Section 46 of the Restatement (Second) of Torts.

390.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's grossly negligent and reckless actions the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XIII
## NEGLIGENCE PER SE – VIOLATION OF N.J. STAT. § 9:6-8.10
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

391.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

392.    At all times material hereto, pursuant to N.J. Stat. §9:6-8.10, defendant Roman Catholic Archdiocese of Philadelphia owed the plaintiff a statutory duty to take reasonable measures to report to the Division of Child Protection and Permanency that the plaintiff had been subjected to sexual abuse.

393.    Upon having actual or constructive knowledge that the plaintiff had been subjected to sexual child abuse perpetrated by its employees, servants or agents, defendant Roman Catholic

Archdiocese of Philadelphia breached the statutory duty of care it owed to the plaintiff pursuant to N.J. Stat. § 9:6-8.10 and acted with a reckless indifference to the knowledge that the plaintiff had been subjected to acts of child sexual abuse perpetrated by its employees, servants or agents and actively concealed the information.

394.    Upon having actual or constructive knowledge that the plaintiff had been subjected to sexual child abuse perpetrated by its employees, servants or agents defendant Roman Catholic Archdiocese of Philadelphia breached the statutory duty of care it owed to the plaintiff pursuant to N.J. Stat. § 9:6-8.10 and acted with a reckless indifference to the knowledge that the plaintiff had been subjected to acts of child sexual abuse perpetrated by its employees, servants or agents and chose not to report the conduct to the Division of Child Protection and Permanency.

395.    Defendant Roman Catholic Archdiocese of Philadelphia, by and through its authorized agents, ostensible agents, servants, workman and/or employees acted with a reckless or deliberate indifference to the known acts of sexual child abuse suffered by the plaintiff.

396.    Defendant Roman Catholic Archdiocese of Philadelphia, by and through its authorized agents, ostensible agents, servants, workman and/or employees acted with a reckless or deliberate indifference to the welfare of the plaintiff

397.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's reckless and indifferent actions, omissions, or failures to act, the plaintiff has been caused to suffer those various injuries, loss and expenses aforementioned.

WHEREFORE, the plaintiff prays for judgment in his favor and against defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven at trial;

II.    That plaintiff be awarded punitive damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT XIV
### NEGLIGENCE PER SE – VIOLATION OF N.J. STAT. § 9:6-8.10
### (<u>Plaintiff v Roman Catholic Diocese of Camden</u>)

398.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

399.    At all times material hereto, pursuant to N.J. Stat. § 9:6-8.10, defendant Roman Catholic Diocese of Camden owed the plaintiff a statutory duty to take reasonable measures to report to the Division of Child Protection and Permanency that the plaintiff had been subjected to sexual abuse.

400.    Upon having actual or constructive knowledge that the plaintiff had been subjected to sexual child abuse perpetrated by its employees, servants or agents defendant Roman Catholic Diocese of Camden breached the statutory duty of care it owed to the plaintiff pursuant to N.J. Stat. § 9:6-8.10 and acted with a reckless indifference to the knowledge that the plaintiff had been subjected to acts of child sexual abuse perpetrated by its employees, servants or agents and actively concealed the information.

401.    Upon having actual or constructive knowledge that the plaintiff had been subjected to sexual child abuse perpetrated by its employees, servants or agents defendant Roman Catholic Diocese of Camden breached the statutory duty of care it owed to the plaintiff pursuant to N.J. Stat. § 9:6-8.10 and acted with a reckless indifference to the knowledge that the plaintiff had been subjected to acts of child sexual abuse perpetrated by its employees, servants or agents and chose not to report the conduct to the Division of Child Protection and Permanency.

402.   Defendant Roman Catholic Diocese of Camden, by and through its authorized agents, ostensible agents, servants, workman and/or employees acted with a reckless or deliberate indifference to the known acts of sexual child abuse suffered by the plaintiff.

403.   Defendant Roman Catholic Diocese of Camden, by and through its authorized agents, ostensible agents, servants, workman and/or employees acted with a reckless or deliberate indifference to the welfare of the plaintiff

404.   As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's reckless and indifferent actions, omissions, or failures to act, the plaintiff has been caused to suffer those various injuries, loss and expenses aforementioned.

WHEREFORE, the plaintiff prays for judgment in his favor and against defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     That plaintiff be awarded punitive damages as proven at trial;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XV
## NEGLIGENCE – VICARIOUS LIABILITY
### (<u>Plaintiff v Roman Catholic Archdiocese of Philadelphia</u>)

405.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

406.   Plaintiff, a parishioner, trusted and sought counseling, protection and guidance from the defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents.

407.    At all times material hereto, the plaintiff was entitled to seek pastoral trust, counseling, protection and guidance free from the fear that the clergy counselors would sexually abuse the plaintiff.

408.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, owed the plaintiff a duty of care to protect and safeguard the plaintiff from foreseeable harm and abuse.

409.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents breached the duty of care it owed to the plaintiff by failing to protect and safeguard the plaintiff from foreseeable harm and abuse.

410.    The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

411.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's grossly negligent, reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XVI
## NEGLIGENCE – VICARIOUS LIABILITY
## (Plaintiff v Roman Catholic Diocese of Camden)

412.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

413.   Plaintiff, a parishioner, trusted and sought counseling, protection and guidance from the defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents.

414.   At all times material hereto, the plaintiff was entitled to seek pastoral trust, counseling, protection and guidance free from the fear that the clergy counselors would sexually abuse the plaintiff.

415.   At all times material hereto, the defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, owed the plaintiff a duty of care to protect and safeguard the plaintiff from foreseeable harm and abuse.

416.   At all times material hereto, the defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents breached the duty of care it owed to the plaintiff by failing to protect and safeguard the plaintiff from foreseeable harm and abuse.

417.   The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

418.   As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's grossly negligent, reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XVII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – VICARIOUS LIABILITY
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

419.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

420.    At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Archdiocese of Philadelphia owed a duty of care to the plaintiff not to engage in intentional or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

421.    At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia breached the aforementioned duty of care which it owed the plaintiff as a result of its representative, employees, agents or ostensible agents having sexually abused the plaintiff.

422.    At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Archdiocese of Philadelphia acted intentionally with a reckless and deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

423.    The conduct of the defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, was so extreme and outrageous

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

424.     As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's intentional, reckless, willful, and wanton actions, by and through its representative, employees, agents or ostensible agents, the plaintiff has been caused to suffer emotional distress that is so severe that no reasonable person could be expected to endure it.

425.     The defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions of Section 46 of the Restatement (Second) of Torts.

426.     The defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

427.     As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's intentional, reckless, willful, and wanton actions, by and through its representative, employees, agents or ostensible agents, the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XVIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – VICARIOUS LIABILITY
### (Plaintiff v Roman Catholic Diocese of Camden)

428.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

429.    At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Diocese of Camden owed a duty of care to the plaintiff not to engage in intentional or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

430.    At all times material hereto, the defendant Roman Catholic Diocese of Camden breached the aforementioned duty of care which it owed the plaintiff as a result of its representative, employees, agents or ostensible agents having sexually abused the plaintiff.

431.    At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Diocese of Camden acted intentionally with a reckless and deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

432.    The conduct of the defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, was so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

433.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's intentional, reckless, willful, and wanton actions, by and through its representative, employees, agents or ostensible agents, the plaintiff has been caused to suffer emotional distress that is so severe that no reasonable person could be expected to endure it.

434.    The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and

through its representative, employees, agents or ostensible agents, pursuant to the provisions of Section 46 of the Restatement (Second) of Torts.

435.    The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

436.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's intentional, reckless, willful, and wanton actions, by and through its representative, employees, agents or ostensible agents, the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.


## COUNT XIX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – VICARIOUS LIABILITY
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

437.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

438.    At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Archdiocese of Philadelphia owed the plaintiff a duty not to engage in negligent, intentional, reckless, or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

439.   At all times material hereto, the defendant Roman Catholic Archdiocese of Philadelphia breached the aforementioned duty of care which it owed the plaintiff as a result of its representative, employees, agents or ostensible agents having sexually abused the plaintiff.

440.   At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Archdiocese of Philadelphia acted recklessly in deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

441.   The conduct of the defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, was so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

442.   As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's reckless, willful, wanton and intentional actions, by and through its representative, employees, agents or ostensible agents, the plaintiff has been caused to suffer emotional distress that is so severe that no reasonable person could be expected to endure it.

443.   The defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions of Section 46 of the Restatement (Second) of Torts.

444.   The defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

445.   As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's grossly negligent and reckless actions the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.


## COUNT XX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – VICARIOUS LIABILITY
### (Plaintiff v Roman Catholic Diocese of Camden)

446.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

447.    At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Diocese of Camden owed the plaintiff a duty not to engage in negligent, reckless, or outrageous behavior which foreseeably would result in causing the plaintiff to suffer severe emotional trauma.

448.    At all times material hereto, the defendant Roman Catholic Diocese of Camden breached the aforementioned duty of care which it owed the plaintiff as a result of its representative, employees, agents or ostensible agents having sexually abused the plaintiff.

449.    At all times material hereto, by and through its representative, employees, agents or ostensible agents, the defendant Roman Catholic Diocese of Camden acted recklessly in deliberate disregard for the welfare of the plaintiff and the high degree of probability that emotional distress will follow.

450.    The conduct of the defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, was so extreme and outrageous as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

451.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's reckless, willful, wanton and intentional actions, by and through its representative, employees, agents or ostensible agents, the plaintiff has been caused to suffer emotional distress that is so severe that no reasonable person could be expected to endure it.

452.    The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions of Section 46 of the Restatement (Second) of Torts.

453.    The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

454.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's grossly negligent and reckless actions the plaintiff has been caused to suffer emotional distress and those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven at trial;

II.    The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.    That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XXI
## BATTERY – VICARIOUS LIABILITY
### (Plaintiff v Roman Catholic Archdiocese of Philadelphia)

455.     Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

456.     At material times, the plaintiff was a minor and of a tender age.

457.     At all material times, the plaintiff was unable to protect himself against unwanted sexual advances.

458.     At all material times, the plaintiff was entitled to be protected from unwanted sexual advances according to the usages of decent society.

459.     At all material times, the plaintiff was entitled to be protected from offensive contacts, or those which are contrary to all good manners.

460.     The defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to harmful and offensive contact.

461.     The defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to an unauthorized invasion of the plaintiff's person.

462.     The defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to personal indignities.

463.     The defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

464.     As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer

those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.       That plaintiff be awarded compensatory damages as proven at trial;

II.      The plaintiff be awarded punitive damages;

III.     That plaintiff be awarded interest and damages for prejudgment delay;

IV.      That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XXII
## BATTERY – VICARIOUS LIABILITY
### (Plaintiff v Roman Catholic Diocese of Camden)

465.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

466.    At all material times, the plaintiff was a minor and of a tender age.

467.    At all material times, the plaintiff was unable to protect himself against unwanted sexual advances.

468.    At all material times, the plaintiff was entitled to be protected from unwanted sexual advances according to the usages of decent society.

469.    At all material times, the plaintiff was entitled to be protected from offensive contacts, or those which are contrary to all good manners.

470.    The defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to harmful and offensive contact.

471.    The defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to an unauthorized invasion of the plaintiff's person.

472.     The defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to personal indignities.

473.     The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

474.     As a direct and proximate result of the defendant Roman Catholic Diocese of Camden's reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.


**COUNT XXIII**
**FALSE IMPRISONMENT – VICARIOUS LIABILITY**
**(Plaintiff v Roman Catholic Archdiocese of Philadelphia)**

475.     Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

476.     The defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to constraint without the color of legal authority.

477.     The defendant Roman Catholic Archdiocese of Philadelphia, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to unlawful detention.

478.    The defendant Roman Catholic Archdiocese of Philadelphia is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section 219 of the Restatement (Second) of Agency.

479.    As a direct and proximate result of the defendant Roman Catholic Archdiocese of Philadelphia's reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Archdiocese of Philadelphia and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven at trial;

II.     The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.


## COUNT XXIV
## FALSE IMPRISONMENT – VICARIOUS LIABILITY
### (Plaintiff v Roman Catholic Diocese of Camden)

480.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

481.    The defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to constraint without the color of legal authority.

482.    The defendant Roman Catholic Diocese of Camden, by and through its representative, employees, agents or ostensible agents, subjected the plaintiff to unlawful detention.

483.    The defendant Roman Catholic Diocese of Camden is liable to the plaintiff, by and through its representative, employees, agents or ostensible agents, pursuant to the provisions Section

219 of the Restatement (Second) of Agency.

484.    As a direct and proximate result of the defendant Roman Catholic Diocese of Camden reckless, willful, wanton and intentional actions the plaintiff has been caused to suffer those injuries, harms, losses, and expenses aforementioned.

WHEREFORE, plaintiff requests that this Court enter judgment in his favor and against the defendant Roman Catholic Diocese of Camden and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven at trial;

II.    The plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.    That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XXV
## CIVIL CONSPIRACY
### (Plaintiff v All Defendants)

485.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

486.    At all times material hereto, relevant to the subject matter described in this Complaint, the defendants assisted each other in performing or omitted to perform the various actions described and lent approval and support to each other during the events described which caused the plaintiff to suffer harms and losses.

487.    At all times material hereto, relevant to the subject matter described in this Complaint, the defendants combined or otherwise agreed to conceal the illegal and immoral acts of pedophilic or ephebophile priests.

488.    At all times material hereto, relevant to the subject matter described in this Complaint, defendants trafficked the plaintiff with the intent and purpose to sexually exploit the plaintiff.

489.    The aforementioned combined action of the defendants was undertaken with the intent and in furtherance of a scheme and plan to conceal the illegal and immoral acts of pedophilic or ephebophile priests.

490.    The aforementioned combined action of the defendants was undertaken with malice.

491.    The aforementioned combined action of the defendants was undertaken with the intent to injure the plaintiff.

492.    The aforementioned combined action of the defendants was undertaken without justification.

493.    As a direct and proximate result of the defendants' actions the plaintiff was caused to suffer that injury, harm, loss, and expense aforementioned.

WHEREFORE, the plaintiff requests that this Court enter judgment in his favor and against defendants, jointly and severally, and award the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven at trial;

II.    That plaintiff be awarded punitive damages;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.    That plaintiff be awarded further relief as this Court may deem appropriate.

## NOTICE PURSUANT TO NEW JERSEY COURT RULES 1:5-1(a) AND 4:17-4(c)

The undersigned attorney demands that each party herein serving pleadings and interrogatories and receiving answer thereto, serve copies of such pleadings and answered interrogatories received from any party upon the undersigned.  The demand is intended to be a continuing demand.

## CERTIFICATION PURSUANT TO NEW JERSEY COURT RULE 4:5-1(b)(2)

I hereby certify that to my knowledge, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding is contemplated, nor are there any other necessary parties.

## DESIGNATION OF TRIAL COUNSEL PURSUANT TO
## NEW JERSEY COURT RULE 4:25-4

Joseph Auddino, Esquire is hereby designated as trial counsel for the plaintiff.

## DEMAND FOR JURY TRIAL PURSUANT TO NEW JERSEY
## COURT RULES 1:8-2(b) AND 4:35-1(a)

Plaintiff demands a trial by jury as to all counts and causes of action and all issues raised by this Complaint pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

## DEMAND FOR DISCOVERY OF INSURANCE AGREEMENTS AND COVERAGE PURSUANT TO NEW JERSEY COURT RULE 4:10-2(b)

Demand is made by the plaintiff pursuant to N.J.Ct.R. 4:10-2(b) that the defendants disclose to the plaintiff the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. The defendants are requested to serve the plaintiff with the contents of any responsive insurance agreement or in the alternative, state under oath or certification the: (1) named insured; (2) the policy number; (3) the name and address of the insurer or issuer of the policy; (4) effective dates of the policy; (5) personal injury coverage limits of policy; (6) the terms of the insurance agreement provide that the policy is cannibalizing.

Respectfully submitted,

By:       */s/ Joseph Auddino*_____
          Joseph Auddino, Esquire
          NJ Attorney I.D. No. 08862013
          MARINO ASSOCIATES
          301 Wharton Street
          Philadelphia, PA 19147
          Telephone:     (215) 462-3200
          Telecopier:     (215) 462-4763
          jauddino@marinoassociates.net

Dated: July 2, 2020                *Attorney for Plaintiff*

## SUMMONS

Attorney(s) _____

Office Address _____

Town, State, Zip Code _____

_____

Telephone Number _____

Attorney(s) for Plaintiff _____

_____

Plaintiff(s)

vs.

_____

Defendant(s)

## Superior Court of New Jersey

_____ County

_____ Division

Docket No: _____

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ  08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

_____
Clerk of the Superior Court

DATED: _____

Name of Defendant to Be Served: _____

Address of Defendant to Be Served: _____

## SUMMONS

Attorney(s) _____

Office Address _____

Town, State, Zip Code _____

_____

Telephone Number _____

Attorney(s) for Plaintiff _____

_____

_____

Plaintiff(s)

vs.

_____

_____

Defendant(s)

### Superior Court of New Jersey

_____ County

_____ Division

Docket No: _____

### CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

_____

Clerk of the Superior Court

DATED: _____

Name of Defendant to Be Served: _____

Address of Defendant to Be Served: _____

# Civil Case Information Statement

**Case Details: CAMDEN | Civil Part Docket# L-002276-20**

**Case Caption:** B S  VS ARCHDIOCESE OF PHILA
DELPHIA

**Case Initiation Date:** 07/02/2020

**Attorney Name:** JOSEPH AUDDINO

**Firm Name:** MARINO ASSOCIATES

**Address:** 301 WHARTON STREET

PHILADELPHIA PA 19147

**Phone:** 2154623200

**Name of Party:** PLAINTIFF : B, S

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** ASSAULT AND BATTERY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: S B?** YES
**Plaintiff's date of birth: 07/17/1979**
**Est. date of first incident of abuse: 09/01/1989**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain)   Priest - Parishoner

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
It is anticipated that this case will involve discovery issues relating to the disclosure of records maintained by Defendants relating to personnel records of offending priests and details of abuse held in secrecy by Defendants.

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
        **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>07/02/2020</u>
Dated

<u>/s/ JOSEPH AUDDINO</u>
Signed